## Martin v. Chesapeake & O. Ry. Co.

(Decided March 25, 1938.)

COMBS & COMBS and LeWRIGHT BROWNING for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Dennis Martin, an infant, by his father and next friend, Crit Martin, instituted this action in the Floyd circuit court on the 9th day of July, 1934, against the Chesapeake and Ohio Railway Company for damages in the sum of $3,100, which he alleges resulted to him on account of the defendant, its agents and servants, in charge of the operation of its train, negligently and carelessly handling same, while he was standing upon and near to the edge of the platform at the flag station of Jump, Floyd county, Ky., with knowledge that he was standing there, moved its train carelessly and negligently, so that the force thereof and suction of the train caused Martin to fall from the platform to the ground and roll under the moving train, which ran over, mashed and mangled his right foot to such an extent that amputation was required. The defendant by answer denied the negligence set out in the petition and affirmatively pleaded that the proximate cause of Martin's injury was his contributory negligence. The contributory negligence was denied. A trial was had before

a jury on the 27th day of February, 1935, resulting in the court, at the conclusion of all of the evidence, to mandatorily direct the jury to find a verdict for the defendant. This appeal follows.

The only question presented is, accepting the evidence of plaintiff 'as true, Was there any negligence shown in the proof on the part of the defendant, and if shown, was the plaintiff's own contributory negligence, from the proof, as a whole, as a matter of law, the proximate cause of his injury? To solve that question, requires a careful and accurate resumé of the proof.

Dennis Martin was a boy of the age of a few months less than 10 years, well developed in body and mental capacity. He lived in the country about a quarter of a mile from the flag station, known as Jump, where the accident occurred. He was accompanied to the station by a neighbor boy, Walter Pennington, of the age of 13 years. They brought with them a coffee sack of dried May apple roots which belonged to Martin, with the intention on the part of Martin to ship same to Pikeville upon a passenger train that was expected to come along in a short while and stop at that station on its way to Pikeville, the county seat of Pike county, Ky. After reaching the station, Dennis Martin testified that he walked around the station on the platform all the time waiting for the passenger train. There was a freight train on the track when he arrived there. He and the Pennington boy were there about 10 minutes before it started to move, standing at the lower end of the platform. After it began to move and after two or three gondolas had passed, Pennington caught hold of a stirrup upon one of the gondolas and rode it up above the station a short distance, then jumped off and came back and caught another in the same way and rode up the road again. He, Martin, stood upon the platform all the time watching Pennington. In doing so, his head began "to swim and everything commenced to go around." He threw up his hand and the train hit him and knocked him down upon the ground. He started to roll (meaning, rolling his body), and, as he was getting up onto the station platform, he went under the side of the train. The train caught him as he crawled upon the station platform, mashing and mangling his foot. He was then taken to an elm tree close by, by some parties that he did not know. From that place he was conveyed to the hospital located at Martin

where he remained 7 days. There his right foot that was run over was amputated just above the ankle. On cross-examination he stated that he was standing about 2 or 3 feet from the empty coal cars that were being moved along the track to Beaver creek to be loaded with coal; at least, he was standing close enough to reach out and touch the car with his hand; that he told the Pennington boy his head was swimming; that he threw up his hand and the train knocked him down; that the reason he threw up his hand, he was about to fall; that the train hit him on the middle finger of his hand, but did not hurt him; that he knew that it was dangerous to be close to the railroad track at the time the train was moving; that he had attended school for about 3 years; that he also knew of another boy shortly before this time getting his foot cut off; that he was standing close to the moving train, but was not thinking of the danger; that when he threw up his hand, the train was moving out of the station, but he did not know how fast it was running, but it was running fast; that he did not get dizzy until the Pennington boy had ridden up and down the track at least two or three times, and had returned to where he was; that all the time he was watching Pennington and not the train, when he became dizzy. Crit Martin, the father of the boy, said that he knew nothing about the accident and was not present when it occurred, but did say that his son was a bright boy. Walter Pennington testified that he and Martin lived close to each other, about 200 yards apart; that they reached the station with the sack of dried May apple roots in the afternoon. There was at the time on the track what was known as a shifting freight train. It had no engine attached to it at the time they arrived there. After they had been there a short while, those in operation of the engine at the Turner Elkhorn Coal Company hooked the engine onto the cars standing on the track and then pulled out up the creek. As they did so, he and Martin were standing on the station platform. He grabbed hold of a stirrup on one of the gondolas after two or three had passed and rode to the upper end of the station and then jumped off and came back to where he was at first, then caught another stirrup and then rode to where he got off the first time, then came back to where he left Martin standing near the May apple root sack that he had with him; that he saw Martin fall under the train and heard him say something about the train sucking him under. He saw

him fall down between the station and the rails. He then left at once and ran up the hollow to tell the boy's father, Crit Martin, of the accident. When he saw Dennis Martin come up from the ground, it was about the middle way of the station. He climbed upon the platform and was sitting crying when he left. This is in substance all the proof of the plaintiff as to how the accident occurred.

At this time the defendant entered a motion for a directed verdict. The court deferred ruling until the defendant's proof was heard. C. R. Marshall, witness for the defendant, in substance, stated that he was an engineer working for the defendant and had been so engaged for 18 years; that his run was between Martin and Weeksbury, which embraces a run that passes the station of Jump on Left Beaver creek. This accident occurred on the 12th day of June, 1934. He was the engineer of the train on that day. It was a freight train. They had about 50 or 54 cars and were going toward Weeksbury. All the cars were coal cars and empty. They were mostly copper bottom and steel gondolas. They were setting off cars to be loaded. By that, it is meant that they were supplying the Turner Elkhorn Coal Company with empty cars. As they moved the cars up to the coal mine, they passed Jump Station, which was on the left as you go up the creek, and the railroad track was on the right of the station going up. When they had finished doing that, the train crew brought the engine back and connected it with the cars that were left upon the track at the station. While they were at the Turner Elkhorn Coal Company, the passenger train passed and went on toward Weeksbury. He did not know anything about the accident until the following day. At the time they passed through the station where it was said the boy was injured, they were making about 5 or 6 miles an hour, just starting the train. It was necessary, after moving and after passing the station, to go slow in order to pick up the flagman. When they reached the flagman the train was running not to exceed 10 or 12 miles an hour; that he was on the locomotive, his place of duty, and knew nothing of the injury to the boy until he learned of it the next day. His testimony was corroborated by the flagman, fireman, brakeman and conductor who had charge of the train of cars that injured the boy. Neither of the witnesses saw the boy before he was injured or

knew of his injury until the next day. Hiram Salisbury stated that he saw the Martin boy on that day at Jump Station; that at the time he saw him a freight train was standing on the track and he was looking at it when it moved off. He saw the boy when he was injured. He and another boy were riding on the moving train. They caught hold of a stirrup on a coal gondola as it passed them and then rode the length of the platform where Martin got off, but Pennington rode up farther; that he saw the Martin boy when he got on the moving train and when he got off; that he was within 300 or 400 feet of him; that he was looking at him and saw him fall; that he made one trip on the train, but, after he had ridden up a piece on the second trip, he looked like he undertook to step on the steps of the car, missed it, and went between the step and the car. Clell Martin stated that he had known Dennis Martin for sometime and saw him at Jump Station at the time of the accident on the platform; that as he (Clell Martin) came out of the post office and looked toward the station, these two boys were catching the train; that they rode one time up and came back to the end of the station and on the second trip, Pennington got on, but the Martin boy attempted to catch the train and missed and went under it; that he saw the Martin boy running and trying to catch the train and, when he failed to do so, he fell under it. Ralph Anderson also stated that he saw Martin climbing out from under the train, but did not see him when he climbed on the train; that the train was moving slowly. It was just pulling out; that it could not have been going over 5 or 7 miles an hour. This is in substance the testimony of the defendant, and the whole of the proof, except some rebuttal evidence was given, which was of no special importance.

Accepting the evidence of Dennis Martin and his companion, Walter Pennington, as true, there being no other evidence of the alleged negligence, Is there any fact shown that involves a failure upon the part of the defendant or its servants in charge of the train in performing any and every duty it owed to the plaintiff under the circumstances? Where there is no controversy about the facts, and only one conclusion can fairly be drawn by the evidence, and that is, that no negligence was shown, then it became the duty of the trial court to peremptorily instruct the jury to find for the defendant. Foreman v. Western Union Telegraph Com-

pany, 228 Ky. 300, 14 S. W. (2d) 1079. The question arises in every case where the injury of the complaining party is grounded upon negligence, From the proven facts whose negligence was the proximate cause of the injury? As was said in Suter's Adm'r v. Kentucky Power & Light Company, 256 Ky. 356, 76 S. W. (2d) 29, 32:

> "Proximate cause is to be determined as a fact in view of the circumstances attending it. Beiser v. Cincinnati, N. O. & T. P. Railway Company, 152 Ky. 522, 153 S. W. 742, 43 L. R. A., N. S., 1050."

See, also, Stevens' Adm'r v. Watt et al., Head's Adm'r v. Watt, 266 Ky. 608, 99 S. W. (2d) 753. Proximate cause is that cause that leads to and which might have been expected to have produced the result. The connection of cause and effect must be established. Stevens' Adm'r v. Watt et al., Head's Adm'r v. Watt, supra; Logan v. Cincinnati, N. O. & T. P. Railway Company, 139 Ky. 202, 129 S. W. 575. If on examination of the evidence, it is to the effect and not disputed, the proximate cause of the injury was attributable to the plaintiff, then, as a matter of law, it was the duty of the trial court to direct a verdict for the defendant. What in law does contributory negligence mean? In Codell Construction Company et al. v. Steele, 247 Ky. 173, 56 S. W. (2d) 955, 957, we said:

> " 'Contributory negligence' means an act or omission amounting to want of ordinary care on the part of the plaintiff, which, concurring with the negligence of the defendant, is the proximate cause of the injury." See, also, Chesapeake & Ohio Railway Company v. Conley, 136 Ky. 601, 124 S. W. 861.

The proven facts in the instant case are, that at the time of the accident the train was moving slowly; so slow that the Pennington boy could and did get hold of a stirrup of an empty moving gondola and ride for a distance beyond the platform, then come back and catch another and perform this feat as often as two or three times before the accident to the Martin boy occurred. No witness placed the speed of the train in excess of 6 or 7 miles an hour when passing by the low end of the platform where Martin stated he was standing at the time he said, when looking at Pennington who was riding on the train, he became dizzy and fell and

rolled under the moving train. No one of the train crew saw him at any time while on the platform or at any other time or place. There is no testimony from Martin, or his comrade, Pennington, that any member of the crew operating the train knew that he was near the train when it started, or that he was dizzy, or had fallen, or was about to fall against or under the train before or at the time it was moving out of the station, or that the train was moving other than slowly as it left the station. Under that state of facts, by what rule of law could appellee be held liable for the accident to Martin?

In the case of Louisville & Nashville Railroad Company v. Lawson, 161 Ky. 39, 170 S. W. 198, L. R. A. 1917B, 1161, the pleadings and facts were based upon the alleged negligence of the servants operating a train of cars from the suction of the air from a passing train causing the injury to Lawson; the evidence was that the train was moving from 20 to 25 miles an hour. A peremptory instruction was given and approved by this court. If the suction of the train in the instant case drew Martin under it, still appellee would not be responsible unless the proof showed that it knew of the dizziness of Martin, and it was operating the train at an unreasonable and unnecessary rate of speed, and, with that knowledge, by the use of ordinary care, could have stopped the train and prevented his injury. There is no law imposing a duty upon the defendant, its agents and employees in charge of its train, where the plaintiff was on the platform, even if they had known he was there, to have anticipated that he would become dizzy and fall against or under the train. On the other hand, the evidence is abundant and conclusive by several witnesses who saw the accident and who said that when the train started to move out from the station the plaintiff undertook and did steal a ride. Two or three witnesses stated that as the train slowly passed him, he took hold of the stirrup upon a passing gondola and rode to the end of the platform, then got off and went back to where he was and attempted to take hold again and, in endeavoring to put his foot upon the steps of the moving gondola, failed to reach it, then fell down between the steps of the moving train and his foot was mashed. The plaintiff stated that he threw up his hand and struck his middle finger and then fell and rolled under the moving train and, when attempting to get up,

his right foot was caught under the train and was run over. In that way he received the injury complained of, which no doubt was from his attempt to ride the train. Those facts uncontradicted, which must be accepted as true, the injury received by the plaintiff was, as a matter of law, the result of his own contributory negligence from his attempt to climb upon the moving train. His own acts were the proximate cause of his injury. We are unable from the facts to reach any other decision than that the trial court committed no error in giving, at the conclusion of all the testimony, the peremptory instruction. Wherefore, the judgment is affirmed.