## Louisville & N. R. Co. v. Jackson.

May 16, 1941.

J. J. Tye, H. L. Bryant, J. Miller White and H. T. Lively for appellant.

C. R. Luker and J. Milton Luker for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This is an appeal from a judgment awarding the appellee administrator $1,000 damages for the death of his decedent who was killed on March 26, 1938, by a train while crossing appellant's tracks near the post office at Cannon, Kentucky. Several grounds for reversal are urged, including the refusal of the Court to peremptorily instruct the jury to find a verdict for the appellant. Among the assertions advanced by appellant in support of its contention that it was entitled to a directed verdict, either at the conclusion of the plaintiff's testimony or at the conclusion of all of the testimony, were: (1) That decedent was a trespasser whose peril was not discovered by the trainmen in time to have avoided injuring her; and (2) that she was guilty of contributory negligence as a matter of law. A determination of the questions thus raised necessitates a recitation of the testimony.

For several days prior to the fatal accident, the decedent, a woman fifty years of age, and, so far as the record discloses, in full possession of her faculties, had been visiting her daughter, Mrs. Disney, whose residence was on the west side of the right of way extending north and south from Cannon, a flag station, to Manchester. From the residence and crossing the right of way was a footpath leading to a spring on the edge of the right of way. From the spring, the pathway led to a barn situated a short distance southeast of the spring, and branching off from the pathway before it reached the barn, was another pathway leading southwestwardly a short distance to the post office. From there, the path led back across the tracks to a store. In the immediate vicinity there were four or five residences, including that of Mrs. Disney which was situated approximately a quarter of a mile south of the depot. About 7:30 o'clock in the morning, Mrs. Disney and a neighbor, Mrs. Gregory, both of whom were introduced as witnesses by the appellee, were standing near the barn almost opposite and across the tracks from Mrs. Disney's residence. Mrs. Disney testified that she saw her mother coming down the pathway from the residence with a bucket, apparently on her way to the spring. Mrs. Disney saw the train approaching, and believing that it would hit her mother if she attempted to cross in front of it, threw up her hand and "hollered" just as her mother stepped up on the track. Asked if she knew where the train stopped with reference to the place where it had struck her mother, she answered, "No, I couldn't she was running in front of it, and after I saw she was going to get hit I turned my head." Asked if her mother knew that the train was coming, she said:

"No, sir, I don't believe she did know it was coming when she stepped up on the track, I could see her, I was on the hill, and I could see the train coming." Mrs. Gregory, the only other eyewitness to the accident, when asked to tell what she saw, said:

"I saw her get half way from the house to the railroad, and she come up onto the railroad, and she heard the train and turned and run on up the railroad, toward Manchester and run in front of the train, she had stepped on two or three ties when it hit her.

"Q. If I understand you she had stepped on to the railroad and had taken two or three steps when the train hit her? A. Yes, sir.

"Q. Did the train blow the whistle? A. Yes, sir.

"Q. Did it blow the whistle for the station? A. Yes, sir."

We quote the following from her cross-examination:

"Q. Where was Mrs. Jackson at the time Mrs. Disney hollow at her? A. Going up the little path onto the railroad, and she said 'mother is going to get killed,' and she hollowed at her.

"Q. Did Mrs. Disney hollow at her mother before she got on the track? A. Yes, sir.

"Q. How was Mrs. Jackson traveling when you saw her. A. She was running.

"Q. Seem to be running fast? A. Yes, sir.

"Q. Did she ever check her speed? A. No, sir.

"Q. Could you tell whether she ever looked around to see the train or make any effort to get off the track? A. Yes, she looked toward the train and started in a run and run onto the railroad, and started running and never checked up any until the train hit her.

"Q. Did she turn and look toward the train before she started running? A. No, she run down a little bank there at the railroad onto the railroad and she looked toward the train and started to run.

"Q. Then she run up in front of the train? A. Yes, sir.

\* \* \* \* \* \*

"Q. At the speed she was making, from running, did she get onto the track very quickly? A. Yes, sir.

"Q. How close was the train to her when you saw her running there? A. It was close.

"Q. How close was it to her when you saw her run up on to.the track in front of it? A. Close, she just two or three steps when it hit her.

"Q. How many times did Mrs. Disney call to her or hollow to her. A. Two or three times.

"Q. Did you see her throw up her hands? A. No, sir.

"Q. Did her mother pay any heed to her? A. No, sir."

Several witnesses testified that neither the whistle nor bell was sounded after the train left Cannon, and that it was traveling unusually fast; and Mrs. Disney and Mrs. Gregory both expressed the opinion that decedent did not hear Mrs. Disney's warning. Appellee's counsel argue that the quoted testimony does not show that the decedent ran down the path and across the tracks in front of the train but that she began running after she had reached the track, turned her head and saw that she could not complete the crossing. They also contend that the tracks at the point where the tragedy occurred had been used as a passageway by a sufficient number of persons daily for a sufficient period of time to have cast upon the appellant the duty of maintaining a lookout, sounding a warning of the approach of trains, and using all appropriate means to avoid injuring persons upon the track where the pathway in question crossed it. Hence, decedent was not a trespasser but a licensee, and the question, whether she was guilty of contributory negligence in not looking for approaching trains before attempting to cross the track, was a question for the jury. It is true that this Court has held that one is not necessarily guilty of contributory negligence as a matter of law in attempting to cross a railroad track without taking the precaution to look for approaching trains, but the circumstances which caused us to alleviate the consequences which would ordinarily follow from such an omission are not present in the case at bar. In the first place, while several witnesses for appellee testified that from fifty to one hundred families resided within a distance of a mile and a half from the place where Mrs. Jackson was killed, and that from fifty to one hundred persons used the path and other paths nearby in going to and from the post office and store, some of them several times a day, the fact.

remains that the number of persons whose presence on the tracks might have been anticipated in this sparsely settled community was not such as to cast upon the appellant the duty of maintaining a lookout, signaling the approach of trains or slackening their speed. Louisville & Nashville Railroad Co. v. Bush's Adm'x, 285 Ky. 645, 148 S. W. (2d) 1050. Even if it were otherwise and the appellant's trainmen had failed to observe the duties which were thereby cast upon them, the appellant would not have been liable unless the negligence of appellant's employees had been the proximate cause of the injury. Where recoveries have been permitted, notwithstanding the injured person's failure to look for approaching trains before crossing the track, some evidence has been required that the proximate cause of the injuries was some act or omission on the part of the Railroad Company's employees, irrespective of the location of the scene of the accident or whether the injured person was a trespasser or licensee. When negligence of the Company's employees is shown, the question, whether the person injured was guilty of negligence but for which the injuries would not have been sustained, is ordinarily for the jury to determine. But, where a person steps in front of an approaching train which he might have observed had he looked before placing himself in a position of peril, and the point at which he steps upon the track is so close to the approaching train that it would be impossible for those in charge of it to avoid striking him, the proximate cause of the injuries which he receives is his negligence which bars him from recovery as a matter of law, irrespective of any omission or failure of duty on the part of the trainmen. So many cases embodying these principles have been decided by this Court that it would be inexpedient to cite them. A full discussion of the applicable principles will be found in our opinions in the cases of Louisville & Nashville Railroad Co. v. Mitchell's Adm'x, 276 Ky. 671, 124 S. W. (2d) 1025; Louisville & Nashville Railroad Co. v. Brock's Adm'r, 281 Ky. 240, 135 S. W. (2d) 898. In the case at bar the trainmen did not testify, and no evidence was introduced indicating that they discovered or could have discovered decedent's peril in time to have avoided striking her. Hence, no recovery could have been had under the last clear chance doctrine. On the contrary, it was shown that had decedent before crossing the track turned her head in the direction from which the train

which truck her was approaching, she could have seen it 225 feet distant.

The conclusion is inescapable that whether or not decedent began to run before she reached the track, the proximate cause of her death was her contributory negligence, and that the Court should have so adjudged and sustained appellant's motion for a directed verdict. Therefore, it is unnecessary for us to discuss the other grounds relied on for a reversal.

Judgment reversed for proceedings consistent with this opinion.