## LOUISVILLE & N. R. CO. v. HYDE.

Court of Appeals of Kentucky.
April 17, 1951.

Rehearing Denied June 15, 1951.

· C. S. Landrum, C. E. Rice, Jr., Lexington, Henry L. Bryant, Pineville, J. C. Baker, Harlan, for appellant.

Astor Hogg, Harlan, for appellee.

MOREMEN, Justice.

Appellee, Luther Hyde, administrator of the estate of Anna Hyde, deceased, recovered a judgment in the sum of $15,000 for damages resulting from the death of decedent when she was struck by a train operated by appellant in the city of Verda, Harlan County. Appellant, Louisville and Nashville Railroad Company, prosecutes this appeal and assigns as error, among other things, the action of the court in overruling appellant's motion for a peremptory instruction.

At about three o'clock in the afternoon of May 13, 1949, a train consisting of an engine, eighty empty freight cars, and a caboose was climbing a grade which led to a road crossing in the town of Verda in Harlan County. A good many people were about at this time of day. Appellee, Luther Hyde, was at the window of a mine office building about three-quarters of a mile away from the point where the railroad tracks cross a well traveled roadway in

Verda and was watching the train approach. Tony Mitchell and Nobe Jones were talking to each other in front of the Verda Cafe and heard the train because it was making a "pretty good racket," but neither heard the whistle blow nor the bell ring. Estil Bickford, who was painting a sign on a window of the commissary of the Verda Supply Company which faces the railroad near the crossing, heard the train "chugging and making considerable noise" but had only a faint memory of hearing the whistle blow and did not remember hearing the bell ring. Joe Wright was on the roadway about three or four hundred yards from the crossing and heard the train. Charlie Smith heard it, and so did John Worthington, Melta Perry who was at home about half a mile away, and Luther David, who was standing inside a house, also heard the train coming. Clarence McCurry, who is employed as a clerk in the Verda Supply Co. which occupies one of the corners at which the accident happened, was inside the store but did not hear the whistle blow and could not definitely say whether he heard the roar of the train.

At the time the train approached the crossing, Anna Hyde, a housewife, 42 years of age and in perfect health, approached the crossing from the direction of the Harlan-Closplint Highway, which lies about 150 feet from the north rail and is parallel to the railroad track. She walked slowly down the roadway past stores which face the roadway between the Harlan-Closplint Highway and the railroad track and past automobiles and trucks which were parked and waiting for the train to pass. She walked past the last store from which point she had a clear view for about one quarter of a mile in the direction from which the train was coming, continued to approach the railroad track until she stepped across the first rail immediately in front of the train. Apparently she suddenly realized her peril, threw up her hands, and was ground under the wheels.

The evidence introduced in behalf of appellant shows the fireman and the brakeman were riding on the left hand side of the cab, the side on which the deceased approached the train. They observed her walk from behind the corner of the building 29 feet from the track and expected her to stop before she reached the track because she was walking slowly and there was nothing unusual in her appearance. The fireman estimated the engine was within 30 feet of her when she actually stepped in front of the train. He called to the engineer but the latter testified he could not hear him because the whistle was blowing. The engineer who sat on the right hand side of the cab did not see Mrs. Hyde because the engine obstructed his view for about 150 feet beyond the front of the engine. He estimated his speed at about 30 miles an hour. The first time he knew there had been an accident was when he saw a man, who was standing in front of the Verda Supply Co., turn his back and cover his face; when he looked back at that time he saw a slipper coming from under the train. He applied the brakes and brought the train to a stop as soon as he could. The brakeman also corroborated the testimony of the engineer and the fireman, and all three testified that proper signals had been given of the approach of the train.

Appellant introduced about nineteen other witnesses who had been stationed at vantage points at the time of the accident and all testified they were aware of the approach of the train, not only because they heard its roar as it pulled the grade into Verda, but also because they heard the whistle blowing.

 The question we must decide is whether or not appellee's decedent was guilty of contributory negligence as a matter of law. We have held that where fair minded men may properly draw but one conclusion from the testimony adduced, the question of whether or not a person is guilty of contributory negligence becomes a matter of law for the court to decide. It is not necessary that contributory negligence be the proximate cause of the injury, it is sufficient if it contributed to such an extent that but for the concerted action the accident would not have occurred. Nor is it necessary that the person against whom recovery is sought be without blemish or traces of negligent action. Norfolk &

Western Ry. Co. v. Bailey, 307 Ky. 386, 211 S.W.2d 154.

█ The record in this case discloses beyond a doubt that practically every person in this community was aware of the approaching train. This included people who were nearly three-quarters of a mile away from the scene of the accident and it would be a strained conclusion if it were found from this evidence that decedent herself, who should have been most concerned and most alert, did not know the train was coming. We do not know what motive prompted decedent to enter into the path of the train but we are forced to the conclusion that she was aware of the imminent danger. In the case of Louisville & N. R. Co. v. Lefevers' Adm'x, 288 Ky. 195, 155 S.W.2d 845, 848, it was written: "Considering all the testimony introduced by the plaintiff, which is in no way strengthened by the defendant, we are of the opinion that it proved the deceased knew the cars were approaching right at the crossing, and, with that knowledge, undertook to cross ahead of them. Or, at most, that he failed to use his eyes and ears or take any sort of precaution to learn of the train's approach. In either event, he was guilty of contributory negligence as a matter of law."

There have been many cases before this court which dealt with facts similar to those shown here and the facts in each case have presented a degree of difference which has required a re-statement of the various phases of the general rule applicable to the particular case. But throughout the discussion contained in all these cases may be found the re-occurring affirmation of the thought that under any given situation the individual must be as alert and as cognizant of the happenings in his immediate area as other persons who were present at the time and place.

█ In the case at bar the witnesses were in extraordinary unanimity in establishing the fact that every person through the ordinary use of his senses knew the train was near the crossing and this was so even though the person had no intention to enter upon the tracks of the railroad or would anywise be placed in a position of peril because of its passing. Their perceptions were not stimulated by the fact that for the most part they were in a position, or were about to place themselves in a position, that charged them with the duty to exercise, with ordinary care, their sensory capacities. The decedent as she neared the track was probably in a better position to see and hear the train than anyone else in the community, yet she failed to see or hear those things which everyone else saw or heard. We have never adopted the widely accepted rule that one must stop, look, and listen before going onto a railroad track, but neither have we held that the railroad company is a guarantor of the safety of those who might come in contact with its facilities. Nor have we held that one may close his eyes or reject all audible sounds before he enters upon the facilities. Contrariwise we have held that one must use both his eyes and ears at least to the extent of the ordinarily prudent person in such a situation. Louisville & N. R. Co. v. Lefevers' Adm'x, 288 Ky. 195, 155 S.W.2d 845; Louisville & N. Ry. Co. v. Brock's Adm'r, 281 Ky. 240, 135 S.W.2d 898; Louisville & N. R. Co. v. Mitchell's Adm'x, 285 Ky. 576, 148 S.W.2d 1048. It is true that in the case at bar there is a slight amount of evidence of a rather negative character that the train failed to blow a whistle and even if we assume that this is true, it was not the proximate cause of the injury. In the case of Louisville & N. R. Co. v. Jackson, 286 Ky. 595, 151 S.W.2d 386, 388, it was said: "When negligence of the Company's employees is shown, the question, whether the person injured was guilty of negligence but for which the injuries would not have been sustained, is ordinarily for the jury to determine. But, where a person steps in front of an approaching train which he might have observed had he looked before placing himself in a position of peril, and the point at which he steps upon the track is so close to the approaching train that it would be impossible for those in charge of it to avoid striking him, the proximate cause of the injuries which he receives is his negligence which bars him from recovery as a matter of law, irrespective of any

omission or failure of duty on the part of the trainmen. So many cases embodying these principles have been decided by this Court that it would be inexpedient to cite them."

We, therefore, conclude that the court erred in not sustaining appellant's motion for a directed verdict in its favor and the judgment is reversed for proceedings consistent with this opinion.