## HUNT'S ADM'R (H. D. Hunt) v. CHESAPEAKE & O. RY. CO.

Court of Appeals of Kentucky.

Dec. 5, 1952.

Francis M. Burke, Francis D. Burke, Pikeville, for appellant.

Hobson & Scott, Pikeville, Le Wright Browning, Ashland, for appellee.

MOREMEN, Judge.

On January 7, 1948, a freight train of the appellee, Chesapeake & Ohio Railway Company, struck a coal truck owned and operated by Ted E. Hunt, who was killed. A suit for damages was filed, and, when it came on for trial, at the conclusion of all the evidence, the court directed a verdict for appellee.

Appellant contends that decedent was not guilty of contributory negligence as a matter of law and, therefore, appellee's motion for a directed verdict should have been denied.

This accident happened near Boldman, a community near the south bank of the Big Sandy River. From this location an old road led up Hurricane Creek to Pikeville. In 1905, appellee laid a line of track through Boldman which cut off the Caldwell and Hatcher families from the Hurricane Creek road. Appellee constructed a road and two crossings on its right-of-way in order that these families might have an outlet to the Hurricane Creek road. It was a dirt road.

On the Hurricane Creek road, some three miles from Boldman, is the Hurricane truck mine. On the afternoon of the accident decedent drove a load of coal from the Hurricane mine to the tipple at Boldman, as he had done several times every day for the past two or three months. He entered the west end of Boldman, drove north across the main line of the Chesapeake & Ohio Railway Company, turned sharply to the right and followed the road as it leads eastwardly, parallel to the tracks on the company's right-of-way. After driving several hundred feet, he recrossed the tracks (the scene of the collision) and continued to follow the road which here parallels the track on the south side of the line for about four hundred feet and then turns south to the tipple.

Decedent unloaded his truck and started back to the mine. About five hundred feet from the scene of the accident, he stopped his truck and talked to Ruth Caldwell. He then closed the window of the cab of the truck and drove slowly along that portion of the road, which parallels the line on the south side, towards the crossing. At this time, from his rear, proceeding also towards the crossing, was a train traveling about forty miles per hour. The decedent drove slowly onto the tracks without stopping and the train struck the body of the truck squarely behind the cab.

█ It is necessary to discuss at the outset the question of whether this was a public or a private crossing because KRS 277.190 requires that each locomotive give

a signal of its approach at each public crossing, while the general rule has been established that a railway company owes no duty of lookout or warning at private crossings. Louisville & N. R. Co. v. Survant, Ky., 44 S.W. 88; Deitz' Adm'x v. Cincinnati, N. O. & T. P. Ry. Co., 296 Ky. 279, 176 S.W.2d 699. Operators of a train at or near a private crossing are not liable for injuries to a traveler at that crossing unless after discovery of his peril, they fail to use all means to avoid the accident. Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S.W. 721; Chesapeake and Ohio Railway Company v. Hunter's Adm'r, 170 Ky. 4, 185 S.W. 140. However, when a private crossing is used by the public generally with the consent of the railroad company, a duty devolves to give warning of the approach of trains; in other words, if a crossing is a public one, there is no doubt about the duty to give warning or signal; if the crossing is a private one and sufficient evidence is introduced to show habitual use of the crossing by the public, then this use may impose the duty of lookout and warning. Louisville & N. R. Co. v. Arrowood's Adm'r, 280 Ky. 658, 134 S.W.2d 224; Louisville & N. R. Co. v. Foust, 274 Ky. 435, 118 S.W. 2d 771. However, this court has never, so far as we have been able to find, established a definite rule as to the number of people who must use a crossing each day before it may be said that it is a public crossing. In Louisville & N. R. Co. v. Arrowood's Adm'r, 280 Ky. 658, 134 S.W. 2d 224, 226, we said:

"In the Stidham case [Louisville & N. R. Co. v. Stidham's, Adm'x, 194 Ky. 220, 238 S.W. 756], the precedents were reviewed and it was held that the duty of trainmen to anticipate the presence of persons upon the track, and to exercise ordinary care to discover and avoid injuring them, does not arise where the greatest number of persons using the track, according to the largest estimate of many of the witnesses, was 150 persons each 24 hours, and the place of the accident was in the country, although the track connected two incorporated towns located about 3 miles apart. We have held insufficient to establish those duties estimates of the use of the track in such places by as many as 60, 75, or 100, or 125 persons every day."

It seems that in such cases the effect of the use in the particular case is a matter of law for the court to determine.

It also appears that when the person who seeks to make a recovery alleges that the crossing is a public one, he is bound by that allegation even though the proof develops that the crossing is a private one constantly used by the traveling public.

In Louisville & N. R. Co. v. Engle, 278 Ky. 576, 129 S.W.2d 133, an allegation was made that the crossing was a public crossing. The proof showed that the road had been used by the public for a great number of years. The opinion cited Louisville & N. R. Co. v. Whittle's Adm'rs, 216 Ky. 314, 287 S.W. 894, to the effect that a public highway may be established only in the manner provided by statute, or by its dedication to the public use and its acceptance by the proper authorities as a public highway and that, although the acceptance need not be formal, some control on the part of the county authorities must be exercised, and then held that the failure to allege the correct use of the crossing was fatal, saying:

"The evidence conduces only to show that the place where the accident occurred was a private crossing and as already noted there was no allegation of use of it for such times and by such numbers of persons as would impose upon appellant the duty of giving warning of the approach of its trains to the crossing or of keeping a lookout there; and if there had been such allegation there would be no evidence whatever to sustain it." [278 Ky. 576, 129 S.W.2d 134.]

Appellant relies upon Louisville & N. R. Co. v. Blanton, 304 Ky. 125, 200 S.W.2d 133, 135, where a portion of the original road was destroyed and thereafter a road was constructed by the railroad company on its own property. The court reached the conclusion that the road was rebuilt

under KRS 277.060, subsection (2), which provides that the railroad company must restore to its former condition any highway across which it has constructed its line, and that the highway was located pursuant to that statute. In this case, it was said:

"It was shown by uncontradicted evidence that Harlan County has built and maintained a bridge on the road in question, and that the State Highway Commission and Harlan County have maintained the road previous to the change in its location. That appellant itself considered the crossing to be a public one is evidenced by the fact that it maintained a sign on both sides of the crossing at statutory distances therefrom in compliance with KRS 277.160, and, in addition, maintained a whistling post on its railroad line at point fifty rods distant from the crossing pursuant to the provisions of KRS 277.190."

■ It is plain that in the above case, Harlan County had assumed supervision over the road; that the road had been destroyed in part and rebuilt by the railroad. In the case at bar, the road upon which the accident happened was one constructed in order to give an outlet to the Hatcher and Caldwell families. Here, the record is silent as to whether the county had ever assumed control over the old road which led up Hurricane Creek to Pikeville and, since appellees alleged it was a public road, the proof failed to sustain that allegation. However, the opinion in the Blanton case does not discuss the distinction between cases where there is a duty to give a warning at a private crossing because of habitual use of it by the public and cases where the warning is required by statute at a public crossing. In Deitz' Adm'x v. Cincinnati, N. O. & T. P. Ry. Co., 296 Ky. 279, 176 S.W.2d 699, it was pointed out that in instances involving a private crossing the use may be such that a common-law duty is imposed upon the train to give reasonable warning of its approach to the crossing by ringing a bell or blowing a whistle. Under the Engle case and under the law generally, as announced by this court, a railroad company

is entitled to be advised by the pleadings as to which one of the theories the claimant will rely upon, that is, whether it was a public crossing or a private crossing. In this case appellant alleged that the accident happened at a public crossing and failed to prove the allegation.

The trial court did not direct a verdict based on that theory and, in view of the technical nature of the holding, we believe it advisable to discuss the ground upon which the court did base his instruction, namely, that appellant's decedent was guilty of contributory negligence as a matter of law.

■ We have held that where fair-minded men may properly draw but one conclusion from the testimony adduced, the question of whether or not a person is guilty of contributory negligence becomes a matter of law for the court to decide. It is not necessary that the contributory negligence be the sole cause of the injury; it is sufficient if it contributed to such an extent that but for the concerted action the accident would not have occurred. Nor is it necessary that the person against whom recovery is sought be without blemish or traces of negligent action. Norfolk & Western Ry Co. v. Bailey, 307 Ky. 386, 211 S.W.2d 154; Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936. If we assume for the purpose of this discussion that the crossing in question was a private one the use of which required, under the common law, that a signal be given, either the ringing of a bell or the sounding of a whistle would be sufficient. Deitz' Adm'r v. Cincinnati, N. O. & T. P. Ry Co., 296 Ky. 279, 176 S.W.2d 699.

■ The evidence introduced greatly preponderates to establish the fact that the automatic bell on the engine was ringing. There is a difference in the testimony of the witnesses as to whether the whistle was blowing. There is no intimation in the record that appellee's agents were guilty of any other act of negligence. But we have held that even when the trainmen have failed to observe all their proper duties, unless their negligence is the proximate cause of injury, no recovery may be

had, and in cases, such as the one presented here, where the injured person failed to look or listen for the approach of the train, some omission on the part of the trainmen which was the proximate cause of the accident must be shown to justify recovery. But where a person steps or drives in front of an approaching train which he might have observed had he looked before placing himself in a position of peril, and the point upon which he goes upon the track is so close to the approaching train that it would be impossible for those in charge of it to avoid striking him, the proximate cause of the injury he received is the result of his own negligence which bars him from recovery as a matter of law irrespective of any omission or failure of duty on the part of the trainmen. Louisville & N. Ry. Co. v. Jackson, 286 Ky. 595, 151 S.W.2d 386.

Similar in fact to the case at bar is that of Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493, in which the plaintiff approached the crossing in a truck with the windows of the cab closed. The road crossed the railroad tracks diagonally at an angle of about 40 degrees, and for a distance of about 150 feet the plaintiff had an unobstructed view of the approaching train. He testified that he was keeping a lookout but did not see the train until it hit him. It was shown that his speed was such that he could have stopped almost instantly. It was held that he was contributorily negligent as a matter of law.

Also similar in fact to the case at bar is McCarter v. Louisville & N. Ry. Co., 314 Ky. 697, 236 S.W.2d 933, 934, in which this situation existed:

"The truck and trailer were of such length as to make it necessary for appellant to pull out and make practically a 90 degree turn to go over the crossing. Both the railroad tracks and the road were straight and parallel to each other for a distance of 475 or 480 feet from this crossing towards the tipple. In the other direction from the crossing, the railroad was straight for 600 or 700 feet. There was nothing to obstruct appellant's view of the train when he looked into his rear view mirror while traveling the road from the tipple to the crossing, or to obstruct his view of the train as he turned to drive onto the crossing."

We held the injured party guilty of contributory negligence as a matter of law.

Appellant has cited many cases in a carefully prepared brief in which he insists that this court has rejected the "stop, look, and listen" doctrine, which is true. We have never held in a suit against a railroad resulting from an accident which occurred at a crossing that the plaintiff must first show he had stopped, looked and listened before he drove upon the track, in order to recover, but we have held in a great many cases, some of which have been cited herein, that where the injured party fails to look and listen under circumstances where an ordinarily prudent man would look and listen, such person will be guilty of contributory negligence as a matter of law.

In Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936, 938, we said:

"We have never adopted the widely accepted rule that one must stop, look, and listen before going onto a railroad track, but neither have we held that the railroad company is a guarantor of the safety of those who might come in contact with its facilities. Nor have we held that one may close his eyes or reject all audible sounds before he enters upon the facilities. Contrariwise we have held that one must use both his eyes and ears at least to the extent of the ordinarily prudent person in such a situation."

The foregoing language indicates that although we do not have the "stop, look, and listen" rule in this state, we have accepted the "look and listen" rule.

We believe the court correctly directed the verdict.

Judgment affirmed.