**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Inc., Appellant,**

v.

**Mary WALLACE, Personal Representative of David E. Wallace, Deceased.**

Court of Appeals of Kentucky.
Nov. 16, 1956.

Rehearing Denied June 21, 1957.

C. S. Landrum, Lexington, Coleman, Harlin & Orendorf, Bowling Green, for appellant.

Duncan & Huddleston, Paul R. Huddleston, Bowling Green, for appellee.

MOREMEN, Judge.

This is an appeal from a judgment which awarded to appellee, Mary Wallace, executrix of the estate of her husband, David E. Wallace, the sum of $10,000 for damages resulting from his death. Wallace was killed by a passenger train which belonged to appellant, Louisville & Nashville Railroad Company.

The accident occurred at a private crossing on the Wallace farm which is divided in almost equal halves by the north-south main line of the railroad. The land which lies to the east of the railroad track is used for pasture and the production of various crops. The residence, barns and other buildings are situate on the western half. The approach to the Wallace crossing by the track from the north is straight for a distance of about 6,500 feet. Beyond that point is a slight curve. Immediately south of the curve is a highway overpass, and 2,160 feet south of the overpass is a public highway crossing at Sunnyside station. It is about 4,100 feet from the Sunnyside crossing to the Wallace crossing. The railroad right-of-way is fenced across the Wallace farm, with gates at the crossing.

It was the custom of David E. Wallace to drive, each morning, his herd of fourteen dairy cows across the tracks to pasture, and, in the evening, to move them back for milking and feeding. This routine was known to the engineer.

There were only two eyewitnesses to the tragedy, the engineer and the fireman. The engineer testified that when he approached the Sunnyside overpass and crossing, the train was moving at approximately 70 miles per hour and it was not until he passed the public crossing at Sunnyside that he saw an obstruction down the track which he could not immediately identify. He testified:

"Well, after seeing this obstruction, why I made an application of the brakes. I couldn't tell what it was and I made an application of the brakes and, of course, at the rate of speed we were travelling just in a very few seconds we were close enough that we could see it was cattle, and the majority of them they had passed over from the east side over to the west side. And then the track cleared up and there was nothing on the track, and then as we drew closer why I could see two or three of the cows on the east side, or the side that the cows came from. And then I saw a person behind one of the cows there flaying away with his arm and looked like he was shoving on the cow to keep it from getting on the track. So the last I saw of the cow or the person they were in the clear, looked like they were in the clear."

The engineer testified that when he saw the unidentified objects on the track almost a mile from the scene of the accident, he

slowed the train about 10 to 20 miles per hour and sounded an alarm signal which he repeated several times as he approached the Wallace crossing. A small bell was also ringing all the time. About 150 yards back, he recognized the unidentified objects to be cattle, but the train was within 75 feet of the point of impact before he saw Wallace attempting to restrain a cow that had turned toward the path of the rapidly approaching train.

The fireman's testimony is in approximate accord with that of the engineer to the extent of their observance of the unidentified objects, the train's approximate speed (although the fireman placed it at a slower rate) and the sounding of the alarm. He stated the train was within 75 feet of the crossing when the cow turned back and when Wallace made an attempt to restrain her. Both agreed, however, that before that time the track had been clear.

The testimony introduced in behalf of appellee was to the effect that no alarm signal was given during the mile run which lead up to the scene of the accident.

For reversal, it is urged: (1) appellee's contributory negligence bars recovery; (2) it was not shown that appellant was guilty of negligence which was the direct and proximate cause of the accident; and (3) the last clear chance instruction should not have been given.

Before we begin a discussion of the above questions, we will determine the law applicable to railroad crossings of the nature here involved because a decision of the above questions rests upon the duties of the two parties at the place of the accident. The law concerning the duties of those who operate railroad trains when approaching and passing over public crossings and when passing over private crossings long ago crystallized in this state. The duties of the train operator in each instance are quite different. It has been said that the reasons for these differences arise from the purpose of the law to permit the operation of the trains with such speed as will meet the just requirements of commerce and travel and at the same time reduce to a minimum the danger of injuries to people.

■ It was pointed out in Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S.W. 721, 723, that:

"To require a lookout duty of railroads at every private crossing, which may be established by any person for his own use, and where, in the large number of instances, there is no person at all on or about the crossing when the train approaches, and to require the trains to give warning of their approach and to moderate their speed at such places would greatly hinder both commerce and public travel, without any beneficial result. Hence the lookout duty is only required at places at which the presence of persons may be reasonably expected upon or near the tracks of the railroad, and therefore to be anticipated."

■ This same opinion, under ample authority, also contains this statement:

"It must be shown, before a lookout duty is required at a private crossing in the country, that the public generally uses the crossing, and that the railroad has acquiesced in the use, and in such state of case the presence of persons upon the crossing is to be anticipated by those operating the trains."

See also Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705.

■ Under the facts shown in the record, the public, generally, did not use this crossing and its private use was only by the members of the Wallace family. However, attorneys for appellee advance a novel theory to support the contention that the law applicable to public crossings, with its many defined duties upon the railroad

company, should apply to the case at bar. It was pointed out that the early charter granted by the legislature to the Louisville & Nashville Railroad Company provided: "Be it further enacted that whenever in the construction of said road or roads it shall be necessary * * * to pass through the land of any person, it shall also be their (presidents and directors) duty to provide for such person proper wagonways across said railroad from one part of the land to the other." From this, is it argued that the status of David E. Wallace, at the time of the accident, was superior to that of a licensee, and, since he was a user as a matter of right, he was due the care ordinarily assigned to the trainmen in connection with public crossings. We cannot agree with this theory. The same charter of the railroad existed at the time of the many cases cited in Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S.W. 721, and it may be seen from reading that opinion that the variance in the degree of negligence necessary to attach liability at a private crossing and a public crossing grew, not out of the character of ownership or the right to be upon the crossing, but out of the frequency of the general use of it. Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W. 2d 705. We discern no injustice in this shifting of responsibilities because a user of a right, which is exclusively his, should exercise it with greater caution for his own welfare. He is the one who selects the occasion for use.

We have concluded, therefore, that the duties, which the railroad company owed at this crossing, were the same as those applicable to any other private crossing.

We return to appellant's assignments for reversal and must decide whether appellant was guilty of any negligence which was the direct and proximate cause of the accident and if appellee's contributory negligence bars recovery.

In the statement of facts we remarked that the evidence of the witnesses introduced by appellee was directed mainly toward an attempt to show that no alarm signal was given during the mile run which led up to the scene of the accident. Most of these witnesses testified that they heard no signal, but all of them seem to have been aware of the approach of the train. However, since the trainmen owed no duty to sound a signal (they testified that they did sound the alarm) the proof offered cannot be taken as a demonstration of negligence on the part of the trainmen, so, in fact, we have no proof of primary negligence on the part of the railroad.

It has been uniformly held by this court that at such a crossing no duty of lookout is imposed, but if a person's peril is discovered in time to prevent injury to him, the trainmen, even in such cases, are charged with the exercise of ordinary care to use all means at their command to avoid injuring that person.

Here, the proof is uncontradicted that although the trainmen, when they were some distance away, saw unidentified objects on the track, the track later cleared and when they discovered that a man was attempting to restrain a cow from going on the tracks, or to remove her from the tracks, it was too late to avoid the accident. We think, therefore, that there was no showing of negligence on the part of appellant, but, if we assume for the purpose of this discussion that the court might have inferred from the evidence that the trainmen might have performed some act by the way of avoidance, we are confronted with the question of whether, even under that condition, the court should have directed a verdict on the ground that the decedent was contributorily negligent as a matter of law.

We have held that where fairminded men may properly draw but one conclusion from the testimony, the question of whether a person is guilty of contributory negligence becomes a matter of law for the court to decide. It is not necessary

that contributory negligence be the sole cause of the injury, it is sufficient if it contributed to such an extent that but for the concerted action, the accident would not have occurred; nor is it necessary that the person against whom recovery is sought be without traces of negligent action. Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936.

 In this case it seems particularly clear to us that the decedent knew of the approach of the train. The track was straight, most of the people in the neighborhood knew of the approach of the train by its rumble and noise, even if it had not sounded an alarm, and decedent's struggle with the cow to keep her out of the path of the train certainly indicates to us—and we think it should to all fair-minded men—that appellant knew of the imminent danger but nevertheless made a gallant attempt to save the animal.

In any event, one must use both his eyes and his ears, at least to the extent of an ordinarily prudent person, in such a situation, and must see those things which should be seen. Louisville & N. R. Co. v. Lefevers' Adm'x, 288 Ky. 195, 155 S.W. 2d 845; Louisville & N. R. Co. v. Brock's Adm'r, 281 Ky. 240, 135 S.W.2d 898; Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S.W. 721; Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936; Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705.

Appellee insists that the case was properly submitted to the jury under a last clear chance instruction. In Saddler v. Parham, Ky., 249 S.W.2d 945, 949, it was said:

> "There is no evidence showing that the defendant actually discovered the plaintiff's peril in time to avoid him. The only basis upon which the doctrine could be applied here is that the defendant should have discovered the plaintiff's peril in time to avoid him. However, it is held by the great weight of authority that it is only

where the plaintiff is physically unable to escape from his peril that the defendant is held responsible on the ground that he should have discovered the peril."

See Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843.

In the case at bar the decedent was not in a position where he was unable to escape from his peril if he had used proper caution. In fact, he voluntarily moved into the hazardous position in an attempt to save his property. We believe the facts in this case do not warrant a last clear chance instruction.

Appellant moved for a judgment notwithstanding the verdict based on the error of the court in overruling the motion for a directed verdict. The motion should have been sustained, and the case is remanded for the purpose of entering a judgment for appellant notwithstanding the verdict.