## Conley v. Ennis' Administrator.

## Ennis' Administrator v. Weaver, et al.

(Decided May 10, 1916.)

### Appeals from Kenton Circuit Court
### (Criminal, Common Law and Equity Division).

Negligence—Proximate Cause—Evidence.—In a personal injury action the proven injury must be shown to have been the direct or proximate cause of the proven negligence, and unless the evidence shows such connection, directly or by fair inference, there can be no recovery; and if there is a failure of evidence on any one material point it is fatal to him having the burden.

MYERS & HOWARD and JACKSON & WOODWARD for appellant.

JOHN E. SHEPHERD for appellees.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing the first named and affirming the last named appeal.

On Friday afternoon, November 22nd, 1912, between half past five and six o'clock, John Ennis, a boy seven years old, was killed at his home on Western avenue in Covington, by the explosion of a dynamite cap.

This is an action by his father, as administrator, against Joseph Conley, J. J. Weaver, Charles P. Devou, Jacob Auer, and C. E. Harris wherein it is alleged that the defendants during the month of November, 1912, were engaged in the work of constructing and improving certain roadways and driveways in a park in the city of Covington near his residence, and that his said son, John Ennis, came to his death by reason of the gross negligence of the defendants in the handling and transportation of dynamite caps, and in their negligent manner of keeping and storing the same, which were being used by them in such road construction work, by reason of which negligence the said cap came into the possession of the infant John Ennis, who was totally ignorant of its dangerous and deadly character, and which, without fault upon his part, exploded and killed him.

Conley, Weaver and Harris each filed separate answers, and Devou and Auer filed their joint answer, in each of which the material allegations of the petition were denied and contributory negligence pleaded.

On the trial, at the close of the plaintiff's testimony, the court, upon motion, directed the jury to return a verdict in favor of the defendants Weaver, Harris, Devou and Auer, but overruled a similar motion made at the time by Conley, and again overruled Conley's motion for a directed verdict at the close of all the evidence.

A verdict in favor of the plaintiff against Conley was returned upon which judgment was entered; Conley filed his motion and grounds for a new trial and the plaintiff filed his motion and grounds for a new trial as against Weaver, Devou and Auer, and both motions having been overruled, a judgment was entered on the verdict and Conley is prosecuting this appeal from the judgment against him, and the administrator is prosecuting an appeal from the action of the court in directing a verdict for Weaver, Devou and Auer.

First: Considering the Conley appeal, the plaintiff's evidence showed that Conley had a contract for the construction of several miles of roadway through a park in the western portion of the city of Covington, the contract covering two roads through the park, one running north and south and the other east and west. The north and south roadway was first constructed and had been completed a few days prior to the 22nd of November; in its construction a stone-crusher was operated by means of an electric motor, and that motor was housed in what is referred to in the evidence as, a "motor house," which was really a rough box twelve or fourteen feet long, five or six feet high and four or five feet wide, built on a wagon frame so that it might be removed from place to place. It was used not only for housing the motor but for the storing of tools and equipment used in the work, including explosives.

At the completion of the north and south roadway this motor house was at the north end of the roadway at the northern entrance to the park and it was necessary to remove it to the eastern entrance to the park to begin work on the east and west roadway, a distance of a mile or more from its then location. Although this motor house belonged to the city or park commissioners it was at the time under the control of Conley, and it was his duty to remove it to the desired point. One of his employes hitched a team to this portable motor house and removed it, not through the park, but around the park to the eastern entrance, and in doing so it was necessary to

drive some distance southward on Western avenue in the city of Covington, along which it had to pass the home of the Ennis boy, which was between 2nd and 3rd streets on that avenue, the eastern entrance, the objective point, being some distance further south at or near a point where 8th street would have intersected the park if it had gone through there. The evidence does not show the distance from the Ennis home or 2nd or 3rd streets to this eastern entrance of the park, but there are references in it to 2nd and 3rd streets and to 6th, 7th and 8th streets, or to the point where those streets, if extended, would intersect the park. Because, therefore, of this very unsatisfactory condition of the record, the exact distance cannot be stated, but it is apparent that from the Ennis home to the eastern entrance of the park is as much as three or four or more squares.

This motor house was driven along western avenue in the forenoon on the Tuesday preceding the death of the Ennis boy on Friday; in the rear end of this motor house was a door some two or three feet wide, and the whole theory of the plaintiff's case is based upon the idea that that door was swinging open as it was driven by the Ennis home and that the dynamite caps, afterward found about opposite that home a few feet outside of the curbing in a vacant lot used as a dump for trash by persons in the neighborhood, had fallen out through this open door so carelessly permitted to swing open. In the motor house was a part of a box of dynamite and a part of a box of dynamite caps, together with the motor and certain other equipment and tools used in the work.

Whether the case should have been submitted to the jury as against Conley depends wholly upon the evidence of three witnesses, Harry Miller, James Dorsey and Mrs. Ida Kelly, for if their evidence does not sufficiently connect the death of the boy with the negligence of Conley there should have been a directed verdict.

Harry Miller testifies that in November, 1912, he was working for C. E. Harris on Western avenue about 7th street near the eastern entrance to the park; that on the Tuesday morning before the death of the boy between eight and nine o'clock the motor house passed along where he was at work drawn by a pair of horses; that it was stopped at about 7th street or 8th street, or where the latter street would have been if it had extended through, and remained there that day, that night and

until the following afternoon; that the rear door of the motor house was open when it passed where he was at work and that he saw through that door the motor in it, some oil and belting, a part of a box of dynamite, and a part of a box of dynamite caps, some tools and old clothing in the motor house; that there were twenty-five or more dynamite caps in the box which he saw and there were some lying on the floor of the motor house; that he reached in the motor house and picked up one of the dynamite caps and handed it to another workman, Dorsey, who exploded it on the curbing; that when he left work that evening the door to the motor house was still open; that when the motor house passed where he was at work he walked behind it for about 100 feet to the point where it was stopped and where it remained for the night, but that he saw nothing fall out of it. On cross-examination he stated that the point where the motor house was left for the night was at a point where 8th street would be if it went through, and that the box containing the caps, which he saw in the motor house, was about four inches square and an inch high and had either red paper or paint on it and had no top on it, and that an old man drove it up there with a sorrel team.

James Dorsey testifies that in November, 1912, he also was at work for Mr. Harris on Western avenue; that the back door to the motor house was wide open when it came past where they were at work and it was driven on up to between 6th and 8th streets, where it was left; that the door was open over two feet and that it came down to the bottom of the floor of the motor house; that Miller gave him the dynamite cap and he fired it off; that the motor house remained where it was placed until the next day; that there was a motor in the motor house, some belting, some overalls and other junk, but does not state that he saw any dynamite or dynamite caps at all; that the motor house was brought there by a man driving a grey team.

Mrs. Ida Kelly stated that she lived at 258 Western avenue, next door to the Ennis home; that the first part of the week before the death of the Ennis boy she saw a wagon going up the street and it was a peculiar looking thing, had a door to it and was a boxed up wagon; that it rattled and made so much noise that it attracted her attention, but does not state that the rear door to this wagon was open at the time.

The evidence shows that Western avenue had been macadamized and that there was an up grade going south on that avenue, and that on account of heavy rains the small stone on it had been almost completely washed out and there remained only the bed rock, and they on edge; and from this the conclusion is drawn that the box of caps fell out of the rear door while it was open as the wagon passed along the street near the Ennis home, and was because of the rough movement of the wagon thrown over to the side of the street. The evidence also shows that the caps contained in the box found by the children were Du Pont caps No. 5, and that they were found in a Du Pont box.

Summarizing the evidence then we have on Tuesday morning Conley's motor house passing the residence of Ennis between 2nd and 3rd streets on Western avenue proceeding along that rough street on an up grade; we find that some three or four squares after passing the Ennis home the rear door to that motor house is swinging open and there is a part of a box of dynamite caps in it; we have three and one-half days later, on Friday afternoon at half past three o'clock, the children finding a part of a box of dynamite caps opposite the Ennis home four or five feet outside of the curb at a place used by persons in the neighborhood for a trash dump; we have a failure of evidence as to the door of the motor house being open when it passed the Ennis home, and we have a failure to trace the dynamite caps found opposite the Ennis home to the motor house or the custody of Conley.

In other words, we have the negligence of Conley shown at a point several squares from the Ennis home on Tuesday morning, and on the Friday afternoon thereafter the death of the boy, and the only question in this case is whether by any reasonable inference the boy's death could be said to have occurred as the result of that negligence.

There is no evidence that more than a part of one box of caps was at that time stored in the motor house, and the evidence of Miller shows that there was still a part of a box of dynamite caps in the motor house three or four squares after it passed the Ennis home.

The rule has always been, and, as we apprehend, will always be, that the proven injury must be shown to have been the direct or proximate result of the proven negli-

gence, and unless the evidence shows such connection either directly or by fair inference there can be no recovery; and if there is a failure of evidence on any one materal point it is as fatal to him having the burden as if there had been no evidence introduced (L. & N. R. R. Co. v. Lang's Admr., 139 Ky. 304); for who would be heard to complain in court of the negligence of his adversary if that negligence had not resulted to his injury?

Measured by this rule should the plaintiff recover in this action?

He has failed to show anything fell out of Conley's wagon as it passed at any point along Western avenue; he has failed to show that the door of the motor house was open at a point any nearer than three or four squares from the place where the caps were found; he has failed to show that there were more than one box of caps in the motor house, and has shown by his own evidence that there was still a box in it several squares after it passed the Ennis home; he has failed to show that the caps found near his home were ever in the motor house or were ever in the possession of Conley; he has shown that three days and one-half elapsed after Conley's motor house passed up Western avenue before the children found the dynamite caps; he has only shown a state of case from which a suspicion might be indulged that the dynamite caps found three and one-half days later had fallen from the motor house, but has signally failed to show such a connection between the dynamite caps found on Friday afternoon and the motor house which passed his home on Tuesday morning as would authorize a fair inference or deduction that the caps fell from it.

Covington is a city of forty or fifty thousand inhabitants, Newport just across the Licking river is a city of thirty or forty thousand inhabitants and Cincinnati just across the Ohio river is a city of several hundred thousand inhabitants; the three cities combined form a center of population where there is great industrial activity and it requires no great stretch of imagination to see or understand how many different ways during the three days and a half the dynamite caps might have reached the place where they were found.

After a careful and conscientious consideration of the evidence we have reached the conclusion that there was no such connection shown between the boy's death and

the negligence of Conley as authorized a submission of the case to the jury.

In view of our conclusion on the Conley appeal it is unnecessary to further consider the appeal of the administrator against the other defendants named; for manifestly if there can be no recovery against Conley there can be no recovery against any one of them.

On the Conley appeal the judgment is reversed with directions to grant him a new trial and for further proceedings consistent herewith; on the appeal of the administrator the judgment is affirmed.