## Stull's Administratrix v. Kentucky Traction & Terminal Company.

(Decided December 8, 1916.)

### Appeal from Woodford Circuit Court.

1. **Railroads — Operation — Accidents at Crossings — Lookouts.**—A railroad company may operate its trains at any speed, consistent

with the safety of its passengers over private crossings, in the country, and it is not required to give any warning of the train's approach, or to maintain a lookout for persons upon the track or dangerously near to it at such crossings, unless it has been customary for the railroad to give signals of the approach of its trains to such crossings, or the crossing is a place where the presence of persons on the track is to be expected, and therefore to be anticipated, and the latter fact can be shown by proof, that the public generally uses the crossing, with the acquiescence of the railroad company.

2. Railroads—Private Crossings—Ordinary Care.—At private crossings, where no lookout duty is imposed upon the ones operating a railroad train, they are required to use ordinary care, by all the means at hand, to avoid injury to persons upon the track, when they shall have discovered their peril.

3. Railroads—Negligence.—For one, who knows and sees, or by the exercise of ordinary care for his own safety, could see and know that a railroad train is rapidly approaching, to go upon the track immediately before the train is such negligence, as will bar a recovery for any damages suffered by him because of collision with the train.

ROBERT B. FRANKLIN and ROBERT C. TALBOTT for appellant.

WALLACE & HARRISS, WALLACE MUIR and R. C. STOLL for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellee is a corporation, which owns and operates a traction railroad line, upon which interurban cars are used, from Versailles to Lexington. Through the streets and city of Versailles the railroad line is upon the public street, but after leaving the city, the railroad is constructed, at least for some distance, parallel with the Versailles and Lexington turnpike, but not upon the turnpike road, in fact, nine hundred and fifty feet in the direction of Lexington from a point opposite the residence of one Brown, the car line leaves the center of the turnpike and thereafter is constructed, in proximity, to the turnpike, but, at what distance from it does not appear, except, where it passes over the crossing from the turnpike into the residence, which was occupied by the deceased, H. C. Stull, the railroad track is nineteen feet from the center of the pike. From Brown's residence the road passes down a decline, which amounts to thirty-one feet in nine hundred and fifty feet, but at the end of the nine hundred and fifty feet, where the road passes from off of the pike, there is a slight up-grade of four or five feet in nine hundred feet, to the crossing

from the pike into the Stull residence. The deceased, H. C. Stull, and who, as above stated, resided near the railroad, had a private crossing over the railroad track to the turnpike. On the 13th day of May, 1915, the deceased was driving from Versailles to his home, along the pike, and as he passed over the crossing from the pike to his residence, he was struck by an interurban car and killed. To recover damages on account of his death, the appellant, who is the personal representative of decedent, instituted this suit in the Woodford circuit court against the appellee. Upon a trial, after the evidence, which was offered by appellant, had been heard, the court sustained a motion to require the jury to return a verdict for the appellee. The appellant's motion and grounds for a new trial having been overruled, she has appealed to this court, and the question for determination is, whether the trial court properly directed a verdict for the appellee.

It is insisted by the appellant, that the railroad company owed the decedent a lookout duty, at the time and place, when and where he was killed, and it is conceded, that if a lookout duty was not owed to the decedent by the ones who were operating the interurban car, that the appellant has no cause of action and the motion for a direct verdict was properly sustained, but, that if the ones operating the car owed a lookout duty to the decedent, then the evidence of their negligence was sufficient to have required a submission of the case to the jury. The crossing, at which decedent lost his life, seems to have been merely a private crossing, and used only by him and his family. It is not shown that the railroad company was in the habit or had made it the custom of giving any signals of the approach of its cars to this crossing, upon which the decedent could have relied. Neither is it shown that there was any public crossing, at which the railroad company was required by law to give signals of the approach of its cars, or at which it customarily gave signals, which was in such proximity to the private crossing of the decedent, that he could have relied upon any signals at the public crossing. There is no evidence, which tends to show that the private crossing of decedent was created by any contract with the railroad company, or that it was used in reliance upon any contract to that effect. It does not appear that the railroad company ever recognized the crossing, in

any way, except a witness states that once he saw the employes of the company putting cinders at the place of the crossing, which evidence, in the absence of proof that the cinders were being put anywhere except upon the track of the railroad, fails to show any recognition of a crossing at that point. It does not appear that, at that place, the track of the railroad is within the right of way of the turnpike, and no facts appear, which show that decedent had a right of egress and ingress over the right of way of the railroad. It must then be assumed, that in the use of the crossing the decedent was no more than a mere licensee, if as such as that. At the time of his death the decedent, who was an active man, sixty years of age, with unimpaired faculty of hearing, was riding in a buggy, which did not have a top, and was proceeding from Versailles to his home. He left Versailles for his home over the turnpike, just before the interurban car left the station at Versailles, to proceed to Lexington. A witness, whose testimony is uncontradicted, and who, at the time of the accident, was sitting in the front part of the car, testified that he had seen and had a conversation with decedent in Versailles shortly before the car left that station, and when the car had gotten opposite to Brown's residence, he saw decedent's buggy upon the pike, about two hundred and fifty feet from his private crossing, with the horse going in a trot, along the center of the pike, and in the direction of Lexington. The witness testified that he saw and observed the decedent all the time, from that time until he was killed; that decedent never looked back toward the car, and when proceeding to cross the railroad track did not look in the direction of the car; that when the car arrived within two hundred and forty to two hundred and fifty feet of the crossing, it was proceeding at a rate of thirty-five to forty miles per hour. Just about that time the decedent turned the horse from the pike, where he was traveling, and started across the railroad track, with the horse in a walk. The horse had gotten across the track when the car struck the buggy, resulting in decedent's death. The speed of the car was not checked from the time the witness says that he saw the decedent start across the track, until just before or just as it collided with the buggy, when a whistle was blown, the emergency brakes were applied, and it was stopped at a point about two hundred and fifteen to two

hundred and twenty feet from the point of the collision. There was a slight ascending grade from the point of the collision to where the car was stopped, which amounted to less than one foot, in a hundred feet. It, was, further proven, that the motorman, who was operating the car, was standing at his place of duty and looking straight out before him and along the track in front of the car, at all times, from the time the car left the station at Versailles until the collision with the buggy occurred. There was nothing to obstruct the view of the motorman or to prevent him from seeing the decedent, when he turned from the pike to cross the track, if the motorman had been watching the pike, instead of the track before him; neither was there anything to prevent the decedent from seeing the approach of the car when he turned to go over the crossing, except his failure to look in that direction. If he saw the approach of the car, he evidently believed that he could pass over the track before the approach of the car to the crossing.

It is a well settled rule of the law of negligence, that it is never presumed. To sustain a recovery against another because of negligence, the negligence must be proven. Either acts of negligence, which were the proximate cause of the injury, must be proven, or such facts must be proven from which negligence can be inferred. Hughes v. Cincinnati, etc. R. R. Co., 91 Ky. 526; Wintuska's Admr. v. L. & N. R. R. Co., 14 R. 579, 20 S. W. 819; L. & N. R. R. Co. v. Vittitoe's Admr., 19 R. 612, 41 S. W. 269; Morris' Admr. v. L. & N. R. R. Co., 22 R. 1593, 61 S. W. 41; Conley v. Ennis' Admr., 170 Ky. 125. Negligence is the failure to perform a duty, which one owes to another, and where one does not owe to another the duty of performing an act, then there is no negligence as to such person in failing to perform such act. C. & O. Ry. Co. v. Nipp's Admr., 125 Ky. 49; Schulte v. L. & N. R. R. Co., 128 Ky. 627; C. N. O. & T. P. Ry Co. v Harrod's Admr., 132 Ky. 445; Watson's Admr. v. C. & O. Ry. Co., 170 Ky. 254. Hence, before appellee could be held culpable, as for having caused the death of decedent by a negligent act, or by a negligent failure to perform an act, it must appear that the appellee failed to perform some duty, which it owed to decedent, and the failure was the proximate cause of his death.

Under the settled law of this jurisdiction, the duties required of persons who operate railroad trains, when

approaching and passing over public crossings, are very different from those which are required of them at private crossings. The reasons for these differences arise from the purpose of the law to permit the operation of the railroad trains with such expedition as will meet the just requirements of commerce and travel, and at the same time to reduce the danger of injuries to the people to a minimum. To require a lookout duty of railroads at every private crossing, which may be established by any person for his own use, and where, in the large number of instances, there is no person, at all, on or about the crossing when the train approaches, and to require the trains to give warning of their approach and to moderate their speed at such places would greatly hinder both commerce and public travel, without any beneficial result. Hence, the lookout duty is only required at places, at which the presence of persons may be reasonably expected upon or near the tracks of the railroad, and therefore to be anticipated. A railroad may lawfully operate its trains at such speed as is consistent with the safety of its passengers, over private crossings in the country, and it is not required to give any warning of the approach of its trains to such crossings, unless it has been customary for the railroads to give signals of the approach of its trains to such crossings, or the crossing is one where the presence of persons on the track is to be expected, and therefore to be anticipated, and the latter fact can be shown by proof of the extent to which the public makes use of the crossing. It must be shown, before a lookout duty is required at a private crossing in the country, that the public generally uses the crossing and that the railroad has acquiesced in the use, and in such state of case, the presence of persons upon the crossing is to be anticipated by those operating the trains. L. & N. R. R. Co. v. Engleman, 135 Ky. 515; Johnson's Admr. v. L. & N. R. R. Co., 91 Ky. 651; Louisville, etc. R. R. Co. v. Survant, 96 Ky. 197; Davis v. C. & O. Ry. Co., 116 Ky. 144; Hoback v. Louisville, etc. R. R. Co., 99 S. W. 241; L. & N. R. R. Co. v. Bodine, 109 Ky. 509; Early's Admr. v. Louisville, etc. Ry. Co., 115 Ky. 13; Hucker's Admr. v. K. C. R. R. Co., 7 R. 761; C. & O. Ry. Co. v. Hunter, 170 Ky. 4; Speigle v. C. N. O. & T. P. Ry. Co., 170 Ky. 285. In the last named case, *supra,* it was expressly held, that the railroad did not owe the duty of maintaining a lookout for

persons, who might be upon the tracks of the railroad at a private crossing, in the country. In no state of case, are the ones operating a railroad train required to keep a lookout for persons, except those persons who may be upon the tracks or dangerously near to them. The lookout cannot be extended to persons who may be travelers upon nearby highways. In the instant case, there is not any pretense that the crossing at which decedent lost his life is anything other than a mere private crossing, which was made use of by the decedent and his family, only. The proof does not show that it was used in excess of once each day. At such a crossing, it has been uniformly held by this court, that the duty of a lookout is not imposed upon the railroad companies.

Hence, the appellee not owing a duty to the decedent of giving warning of the approach of its cars, nor of moderating the speed of its cars, nor of maintaining a lookout for him upon the crossing, the failure to perform these acts cannot be imputed to the appellee, as negligence, and the only way in which negligence can be attributable to the appellee is, that, if after having seen the peril of decedent, in time to have prevented injury to him, the servants of appellee operating the car failed to exercise ordinary care to use all the means of which they had command to avoid injury to him. C. & O. Ry. Co. v. Hunter, *supra;* Speigle v. C. N. O. & T. P. Ry. Co., 32 R. 785. The proof by appellant shows, that the motorman maintained a constant lookout upon the track in the direction in which the car was proceeding, and while there is no direct proof to the effect, that he ever saw decedent, until he was upon the crossing, it may be inferred that as decedent was traveling upon the pike, which was near to the track of the railroad, he was necessarily included within the scope of the vision of the motorman, but it cannot be assumed that the motorman knew that decedent would undertake to cross the track, at any place, or had any reason to believe that he intended to pass over the crossing. It is only reasonable, that the motorman would assume, and he certainly had a right to do so, that decedent would exercise ordinary care and prudence for his own safety, and would keep out of the way of the car, which was so near by and within his sight, if he would but look toward it. It does not appear, that there was any reason to lead the motorman to believe that decedent would attempt to

cross the track, until he turned his horse toward it. He was driving in the center of the pike, which was nineteen feet from the rail, and when his purpose to drive on the track became apparent, there is no proof to the effect, that the car could have, by any means at hand, been stopped in time to have saved him from injury. There is not any evidence, which conduces to prove that the motorman did not use all means at hand to save the decedent, as quickly as his perilous situation was seen by the motorman. L. & N. R. R. Co. v. Redmon's Admr., 122 Ky. 385; L. & N. R. R. Co. v. Molloy's Admr., 122 Ky. 219; C. & O. Ry. Co. v. Hunter, *supra*. Hence, the peremptory instruction was proper.

Furthermore, it was the duty of decedent when approaching the crossing to use such care for his own safety, as may be usually expected of an ordinarily prudent man, to learn of the approach of a car, and to keep out of its way, and if he failed to exercise such care, and but for such failure he would not have been injured, he so contributed to his death, by his own negligence, that no recovery can be had because of it. The proof shows, without contradiction, that decedent was possessed of all his faculties; that when he approached the railroad track, the car was necessarily very close to him, and in plain view. If he did not see it, he could have done so by the exercise of the slightest care. He had but to raise his eyes toward it. He was then in a safe place, and had he only stopped he would have been unharmed. He either did not exercise the prudence of looking toward the oncoming car, or else he saw it and took the chance of getting over the track before the car approached and failed. In either state of case, he failed to exercise ordinary care for his own safety. It has been oftentimes held, that to go upon a railroad track, just in front of a train, which is rapidly approaching, and which is seen and known to be approaching, or which could be known and seen to be approaching, by the exercise of ordinary care for one's own safety, is such negligence, that no recovery can be had of the railroad company for the injury or death of the person, who is thus negligent. C. & O. Ry. Co. v. Hunter, *supra;* Southern Ry. Co. v. Winchester, 105 S. W. 167, 32 R. 19; Louisville, etc. Ry. Co. v. Taylor, 31 R. 1142; Same v. Ueltchi's Admr., 97 S. W. 14, 29 R. 1136.

The judgment is therefore affirmed.