# Nashville, C. & St. L. Ry. Co. v. Stagner.

October 31, 1947.

Ira D. Smith, Judge.

Walton Whitwell and Joe Lancaster for appellant.

Nat Ryan Hughes for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appeal is from a judgment for $1,600 for personal injuries and the practical destruction of a truck of the appellee, B. J. Stagner, resulting from a railroad crossing collision. The accident occurred in McKenzie, Tenn., but the trial was had under Kentucky common law in Calloway County, the home of the plaintiff.

Main and Walnut Streets intersect so as to form roughly the letter "X." Appellant's railroad runs east and west and bisects the streets at the intersection. Thus

South Main Street is the right leg of the "X" and crosses the railroad diagonally at an angle of about 40 degrees. There is a "V" shaped vacant lot between the street and the railroad. The closest obstruction to the view across the lot is a house on the street 180 feet from the crossing. One traveling northwardly has a clear vision of a train running west to the crossing. It is somewhat difficult to describe the situation but it was clearly shown to the jury and to us by an accurate map and several photographs.

This accident occurred shortly after noon on February 3, 1946. Appellant was driving a loaded truck northwestwardly on South Main Street. The train was composed of three coaches and going west at from 15 to 20 miles per hour, preparatory to stopping at the station, 500 feet away. There is much positive and persuasive evidence that the whistle had blown for the station and then for this crossing and that the locomotive bell was ringing continuously. There is also negative evidence that these signals were not given. The plaintiff was traveling not over 8 miles an hour and could have stopped within one foot, he testified, by the application of his brakes. He was very familiar with the crossing. In answer to a question as to when he first noticed the train, he said, "I heard it running. I kept looking, trying to see it, and just as I saw it, it hit me." His attorney repeated the question in this form, "The first time you saw the train, it struck your truck?" He answered, "Yes." So this is not a mere slip of the tongue but a positive and deliberate statement. The cab windows of the truck were closed. The plaintiff and some other witnesses testified that as one approaches the railroad crossing in a truck cab of this kind, he is not in a position to see a train coming from the east because he approaches at a rather sharp angle, and as the driver is on the left side "he must lean on the far side of the cab and stick his head out of the window to see the train."

The engineer could not see the approaching truck as he was on the other side of the engine. The fireman saw it coming very slowly up to the point where cars usually stop when a train is passing by, and when he saw that the plaintiff was not going to stop, he called to the engineer and the engineer threw on the emergency

brakes. He could not stop in time to avoid striking the truck.

It seems to us that on the conceded facts the court should have directed a verdict for the defendant, on the ground that they established the plaintiff to have been guilty of contributory negligence. The physical conditions demonstrate clear visibility across the vacant lot in the triangle formed by the street and the track. The train came into the range of plaintiff's vision while he was traveling the 180 feet between the house and the crossing at the apex of the triangle. It is probable that the train was going about three times as fast as the plaintiff, so when he was 10 feet from the track, the train was 30 feet away. The plaintiff says that he was looking for the train and, considering the slow speed, he could have stopped his car almost instantly. Even at that late moment—when the engine was 20 or 30 feet away—if the plaintiff had not been oblivious to the danger, he could have saved himself.

If, contrary to his testimony, the plaintiff did hear and see but attempted to make the crossing before the train, he was negligent under those circumstances.

If the cab of his truck was so constructed as to obscure the view of the plaintiff and if its windows were closed so as to shut out the sound, there was all the more need for him to make certain before attempting to cross the track. Obviously, these two conditions existing in his own vehicle demanded greater diligence and precaution upon his part, for what is ordinary care depends on all the circumstances and conditions. A driver of an automobile whose view is obscured or whose hearing is impaired by any condition must exercise care commensurate with the factual situation and proceed with more caution than where he has an unobstructed view. Blashfield, Cyc. of Auto Law, secs. 1751, 1824.

The duty imposed upon every man to exercise ordinary care for his own safety requires that in approaching a railroad track, he must use his senses in a way that ordinarily prudent persons would do under similar circumstances, in order to determine whether it is safe to cross the track at that time. Where the facts make it certain that a traveler could have seen or heard an approaching train in time to avert a collision had he looked

and listened properly, he will not be heard to say that he looked for but did not see, or listened for and did not hear the train.

Thus it is said upon abundant authority in Blashfield, Cyclopedia of Automobile Law, sec. 1745: "Consequently, where the physical facts show a train to have been in sight as a motorist approached a crossing, then, regardless of testimony as to looking and listening and seeing no train, the law holds the one whose duty it is to look as having seen what was perfectly apparent. As phrased by one court, it is nothing to the purpose that a traveler should say he looked this way and that and saw nothing, when the object he seeks to discover is plainly and palpably before him, and either his statement is not true or his exercise of vision was such as to be not only negligent but culpable."

See also Blashfield, Cyc. of Auto Law, sec. 1747, particularly notes citing and epitomizing Pritchard v. Atchison, T. & S. F. Ry. Co., 99 Kan. 600, 162 P. 315; Burns v. Chicago & Alton R. Co., 223 Ill. App. 439; Pershing v. Detroit, G. H. & M. Ry. Co., 206 Mich. 304, 172 N. W. 530.

Therefore, we conclude that the court should have given a peremptory instruction to the jury to find a verdict for the defendant. Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S. W. 721; Louisville & Nashville R. Co. v. Hurst's Adm'r, 220 Ky. 402, 295 S. W. 458; Louisville R. Co. v. Basler, 198 Ky. 500, 248 S. W. 1027; Holder v. Illinois Central R. Co., 217 Ky. 759, 290 S. W. 698. In the cases of Nashville, C. & St. L. Ry. Co. v. Barnes, 177 Tenn. 690, 152 S. W. 2d 1023; Louisiana & Ark. Ry. Co. v. Jackson, 5 Cir., 95 F. 2d 369, the railroad companies were held not responsible for the accidents under circumstances similar to those of the instant case.

The judgment is reversed.