## BRUMBACH v. DAY.

Court of Appeals of Kentucky.

May 8, 1953.

Rehearing Denied Oct. 16, 1953.

R. Kent Sampson and L. G. Smith, Harlan, for appellant.

James S. Greene, Jr., Harlan, for appellee.

WADDILL, Commissioner.

In this action for personal injuries arising out of a collision between a motor scooter and an automobile, the appellee, Willis Day, operator of the motor scooter recovered judgment against the appellant, Price Brumbach, operator of the automobile, in the amount of $13,568.20. For reversal, it is urged that the evidence shows appellee was guilty of negligence as a matter of law and that the court erred in denying appellant's motion for a directed verdict. As we find merit in this contention, other alleged errors need not be considered.

The collision occurred at about 5:00 p. m. on February 19, 1951, on State Highway No. 38, near the west approach of Roberts' service station located on the north side of the highway between Brookside and Coxton in Harlan County. At the scene of the accident the highway runs approximately east and west and has a bituminous surface 22 feet wide.

The motor scooter of Day and the car of Brumbach were the only vehicles on this stretch of the highway at the time they collided and immediately prior thereto. At the service station there was a panel truck parked parallel to the highway and headed westwardly with its right rear wheel near the southeast corner of the concrete island where the gasoline pumps are located. The left side of the panel truck was approximately 6 feet from the north edge of the highway. There was another truck parked below the panel truck and against the concrete curb which runs along the outside north edge of the bituminous surfaced west approach of the station. This truck was parked headed eastwardly with its left wheels against the concrete curb and its right side was approximately 6 feet from the north edge of the highway. There was a space between the front ends of the two trucks of from 15 to 20 feet.

According to Day, he drove his motor scooter eastwardly along the south side of the highway and upon reaching a point opposite the gasoline pumps of the service station, he saw the highway clear of traffic for a distance of about 600 feet. He cut northwardly across the highway onto the paved approach of the service station and continued to drive between the gasoline pumps and the front of the service station building and around the front of the panel truck and back onto the highway. He stated that before entering the highway he looked in both directions and saw no traffic on the highway. He was traveling between 5 and 6 miles per hour and as he drove out onto the highway and proceeded westwardly, parallel to and about 2 feet from the north edge of the pavement, his motor scooter was struck by the car of Brumbach. Day testified that as he "straightened up his vehicle on the highway" he heard the crying noise of tires sliding on the pavement and looked back and saw Brumbach's car about 12 feet away. From what he saw of the movement of Brumbach's car traveling the approximate distance of 12 feet before striking him, Day estimated Brumbach's speed at 60 miles per hour. Day stated that the edge of the right front bumper of Brumbach's car struck the rear and left side of his scooter and that when Brumbach's automobile struck him, he lost consciousness, and, so, remembered nothing further concerning the collision.

According to the testimony of Brumbach, he was proceeding westwardly along the highway in the direction of Coxton at a speed of 35 or 40 miles per hour. Brumbach stated that prior to the accident, he saw Day driving eastwardly on the highway and turn westwardly between the gaso-

line pumps and the front of the service station building. At the time Day turned into the service station, Brumbach stated he was approaching at a point on the highway 350 feet away and he didn't see Day again until "he popped out in front of that panel truck." Brumbach further stated that Day was out on the highway 3 feet in front of his car when he first saw Day and said at that time there was nothing that he could have done to have avoided running into Day's vehicle. Brumbach fixed his speed at from 30 to 40 miles per hour at the time of collision and estimated Day's speed at 15 to 20 miles per hour.

There is no real dispute between the parties as to how far out on the highway the scooter was when it was struck. Day says 2 feet while Brumbach says 3 feet. Day admitted he did not stop his motor scooter during his tour through the service station or before re-entering the highway. Brumbach conceded that the skid marks of his car upon the bituminous surfaced highway measured 112 feet.

Other witnesses to the accident estimated the speed of Brumbach's car immediately prior to the impact of the collision from 50 to 60 miles an hour.

▆▆ It was clearly the duty of Mr. Day, before re-entering the highway, to look to the east for approaching vehicles and not to proceed into the highway if he saw one coming, unless he could re-enter the highway in safety. KRS 189.330 (6). Of course, Mr. Day was not required to exercise an infallible judgment, but was required to use such care as a reasonably cautious and prudent person would exercise under the circumstances.

▆▆ However, Mr. Day does not claim that he saw the approach of Brumbach's car from the west, nor that he believed that he had time to safely re-enter the highway, but claims he looked and saw no vehicle approaching on the highway. Either Mr. Day did not look for approaching vehicles on the highway or failed to see Brumbach's car, which must have been very close and

in plain sight. In either event Day was negligent.

In Vaughn v. Jones, Ky., 1953, 257 S.W. 2d 583, it was said:

"Thus, it appears that Jones moved out into the highway after looking in the direction from which Vaughn was coming when it was 'approaching so closely on the highway as to constitute an immediate hazard'. KRS 189.330 (4). It was not sufficient that he should have stopped, but have yielded the right-of-way by not proceeding into the highway. KRS 189.330(4). Vaughn could assume, under the circumstances, that Jones would conform to the law and remain where he was until the way was reasonably clear and could act upon that assumption in determining his own manner of using the road. Short v. Robinson, 280 Ky. 707, 134 S.W.2d 594. The only excuse Jones offers is that he did not see the Vaughn car. We have said that testimony that one looked and did not see a train that was right on him was entitled to no reasonable credence; that 'he will not be heard to say that he looked but did not see' it. Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; McCarter v. L. & N. R. Co., 314 Ky. 697, 236 S.W.2d 933. Sometimes maybe failure to see is because one's mind was not registering what his eyes beheld. 'Mental abstraction, not due to any surrounding circumstance, does not palliate inattention to a known danger.' 38 Am.Jur., Negligence, Sec. 187. If, under the circumstances, Jones ought to have seen the approaching car, he is guilty of negligence even though he testified he did not see it. 60 C.J.S., Motor Vehicles, § 363, p. 897, note 56, citing Hefner v. Pattee, 1 Wash.2d 607, 96 P.2d 583; Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W.2d 412; Harrell v. Goodwin, La. App., 32 So.2d 758."

In Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493, 494,

a case in which the reasoning is analogous to that applicable to the facts of this case, the court, in considering the duties of the operator of a vehicle in crossing the railroad crossing, said:

"The duty imposed upon every man to exercise ordinary care for his own safety requires that in approaching a railroad track, he must use his senses in a way that ordinarily prudent persons would do under similar circumstances, in order to determine whether it is safe to cross the track at that time. Where the facts make it certain that a traveler could have seen or heard an approaching train in time to avert a collision had he looked and listened properly, he will not be heard to say that he looked for but did not see, or listened for and did not hear the train.

"Thus it is said upon abundant authority in 3 Blashfield, Cyclopedia of Automobile Law, § 1745: 'Consequently, where the physical facts show a train to have been in sight as a motorist approached a crossing, then, regardless of testimony as to looking and listening and seeing no train, the law holds the one whose duty it is to look as having seen what was perfectly apparent. As phrased by one court, it is nothing to the purpose that a traveler should say he looked this way and that and saw nothing, when the object he seeks to discover is plainly and palpably before him, and either his statement is not true or his exercise of vision was such as to be not only negligent but culpable.'

"See also 3 Blashfield, Cyc. of Auto Law, § 1747, particularly notes citing and epitomizing Pritchard v. Atchison, T. & S. F. Ry. Co., 99 Kan. 600, 162 P. 315; Burns v. Chicago & Alton R. Co., 223 Ill.App. 439; Pershing v. Detroit, G. H. & M. Ry. Co., 206 Mich. 304, 172 N.W. 530."

Therefore, under the evidence appearing in this case, we conclude that the court should have given a peremptory instruction to the jury to find a verdict for the appellant.

The judgment is reversed.