LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,

v.

Geraldine F. HINES, Administratrix of the Estate of Hugh Gates Hines, Deceased, Appellee.

Court of Appeals of Kentucky.

Nov. 30, 1956.

Rehearing Denied June 21, 1957.

Coleman, Harlan & Orendorf, Bowling Green, C. S. Landrum, Lexington, for appellant.

Duncan & Huddleston, Bowling Green, for appellee.

STEWART, Judge.

This is an appeal from a judgment of the Warren Circuit Court entered on the verdict of a jury awarding appellee-plaintiff, Geraldine F. Hines, administratrix of the estate of Hugh Gates Hines, the sum of $18,000 for damages sustained by the estate, for loss of the truck and for funeral expenses incurred when decedent was struck and killed by a train of appellant-defendant, Louisville & Nashville Railroad Company. Reversal is urged upon the ground that the lower court erred because it overruled appellant's motion to peremptorily instruct the jury to return a verdict for it, and, having so erred, it should have sustained appellant's motion for judgment in its favor notwithstanding the verdict.

The accident occurred at a railroad crossing a few feet outside the city limits on the south side of Bowling Green. On August 30, 1954, at about 5:50 a. m., decedent was driving his pickup truck on Robinson Lane, which extends 822 feet in length between the old Russellville Road and the new Russellville Road. The latter road is designated as U. S. Highway 68. Robinson Lane is traversed at a 90 degree angle by the double tracks of appellant, the center line of the northbound track to the east being located approximately 550 feet west of the old Russellville Road and 272 feet east of the new Russellville Road. It was a clear day and visibility was good. Decedent approached the crossing from the old Russellville Road side or from the east and had an unobstructed view of the crossing for the entire 550 feet toward the west. The crossing is elevated in order to afford travel up and over a fill 3¼ to 3½ feet higher than the surface of the surrounding land. The diesel engine and the coaches of the train it was pulling were 14 to 15 feet higher than the top of the rails of the railroad track. The tracks extend in a straight line north for several thousand feet.

H. E. Pilkenton, the fireman on the engine, testified that when decedent's truck was 150 to 200 feet from the crossing, and when the train was 400 to 450 feet therefrom and approaching from the north, he first observed decedent's truck, and, noticing that the speed of the truck was slackening, expected it to stop. When the truck was within 50 feet of the railroad tracks, and starting up the incline, he sounded the alarm whistle on the engine. The bell on the engine, which could be set to work automatically, was ringing and had been ringing continuously from the time the train had pulled out of the Bowling Green station, according to the fireman and the engineer. However, Mrs. Elmer Payne and Mrs. Lonnie Robinson, who testified on behalf of appellee, declared positively that no whistle was sounded and they also stated they did not hear any bell ring. Two other witnesses of appellee's testified they neither heard a bell sound nor a whistle blow.

The fireman also testified that decedent was looking straight ahead and did not glance to the right or left. Nor did he even turn his head when the alarm whistle sounded. He drove his truck up the incline to the northbound track, his right hand on the steering wheel and his left arm in the window of the car door, crossed that track and entered onto the southbound track immediately in front of the diesel engine. Decedent's truck was traveling at a "normal rate" of speed and the train was running at about 45 to 50 miles per hour. Decedent was familiar with the lane and crossing, having traversed them practically every day.

I. N. McElroy owns the property bordering on the north side of Robinson Lane and extending from the old Russellville Road to the east line of the railroad right of way. His residence is on the front part of this lot, facing the old Russellville Road. Some distance back of the house is his barn, and McElroy has a riding ring between his barn and the above right of way. Just after passing the McElroy barn, it is 225 feet to the northbound railroad track. It is undisputed that the back part of the McElroy place was at the time devoid of all weeds, shrubbery, trees and the like. On the land along this stretch there was nothing that could have prevented decedent from seeing the train as he approached the railroad. The only possible obstruction which then could exist between the barn and the tracks would be a row of bushes which apparently were growing along a little road beyond McElroy's fence and parallel to the east side of the railroad right of way. Appellee contends that these bushes partially concealed the train or, at least, provided "ruptive markings" which were "highly deceptive" and tended to camouflage the tracks.

Appellee introduced no witnesses who testified that the bushes served to conceal anything moving on appellant's tracks. She did however present some photographs, made shortly after the accident, which are strongly relied upon to maintain her contention that decedent was unable to obtain an unimpeded view of the oncoming train beyond these bushes. Appellee's "Exhibit G" is a picture which reveals the bushes growing beside the little road and apparently they are very thick along it. However, this picture was taken somewhat close-up and at an angle looking *directly* down the row of bushes, and it cannot be fairly claimed that this is a good representation of the denseness of this vegetation. "Exhibit I" is a picture which was photographed just a few feet east of "Exhibit G", and the photographer, in making it, admits he was told to aim his camera at the bushes. The same criticism we have noted to the picture representing "Exhibit G" can be made as to the one introduced as "Exhibit I." It is significant that appellee offered no picture showing the view of the track from farther up the road. Furthermore, since the pictures were taken so as to emphasize a focus upon the foliage, they tend to magnify the denseness and the height of the bushes, with the result that this makes them appear to obstruct the view of the track.

Appellant produced some pictures taken about the same time by the same photographer from farther up the road and these clearly disclose that the train would have been seen had deceased resorted to the ordinary precaution of looking to his right, that is, in the direction of the approaching train. "Exhibit 1" and "Exhibit 2" of appellant's are photographic views very close to the track and they are perhaps not too helpful, because the locations at which these pictures were taken are so near the track that deceased might not have been able to stop even had he seen the train. However, they do go to point up the fact that appellee's pictures, mentioned above, were taken from sites chosen with great care. Appellant's "Exhibit 4" and "Exhibit 5" are pictures that plainly indicate there was nothing which could have obstructed decedent's view of the train as he advanced toward the railroad. These two pictures show that the bushes were not thick and

they disclose their height rather accurately. Then, too, these photographs reveal that the bushes did not hide the railroad at all for the most part. And we have not yet considered placing a 14-foot diesel engine with a train of several coaches into the scene. It is evident the last two mentioned pictures are conclusive, in our opinion, in establishing that a moving train such as the one involved in the accident would tower over the low bushes near the track.

In addition to the photographic evidence, there is in the record the testimony of certain eyewitnesses which, while not particularly persuasive in itself, does tend to corroborate the showing of the photographs that the railroad would not be concealed from an observer approaching it as decedent did. Charles Bishop, testifying in behalf of appellant, stated that the railroad could be seen the entire length of Robinson Lane, when one entered it from the east, but he probably meant only that the *crossing* could be seen at any point along this lane. Kenneth Ludwig, another witness who appeared for appellant, testified the railroad could be seen without any difficulty. Appellee lays great stress on the fact that Ludwig did not view the general location until after the leaves had fallen, but this obviously does not impair his testimony about the *height* of the bushes. Appellant's witness, Joe Allen, a state patrolman, after stating that one "could see as far as you could see the railroad looking back north," admitted on cross-examination that his testimony was limited to what he saw at the edge of the right of way after stopping and looking before going onto the tracks.

In the light of the facts recited, appellee charges that the death of Hugh Gates Hines was solely due to the negligence of appellant for the reason that the latter's servants failed, according to several witnesses, to ring the bell or sound the alarm whistle of the engine as the train drew near the crossing. Appellant's brief is concerned only with establishing the point that appellee's

decedent was guilty of contributory negligence as a matter of law because the moving train was in plain sight, and that had decedent taken the simple precaution of glancing to his right he would or should have seen it.

The rule is that where fair-minded men may properly draw but one conclusion from the testimony adduced, the question of whether or not a person is guilty of contributory negligence becomes a matter of law for the court to decide. It is not necessary that the contributory negligence be the sole cause of the accident from which the injury flows; it is sufficient·if it contributed to the accident to such an extent that but for the concerted action the same would not have occurred. Contributory negligence on the part of the injured person necessarily assumes negligence on the part of the person against whom recovery is sought, but if the contributory negligence on the part of the injured person was such that without it the injury would not have been received, such person is not entitled to recover. See Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705; Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936; Straight Creek Fuel Co. v. Mullins, 189 Ky. 661, 225 S.W. 726.

Certain duties are required of a person injured in a case such as this and the failure of that person to fulfill any of those duties will bar a recovery, if such failure contributed to the cause of the accident. In Stull's Adm'x v. Kentucky T. & T. Co., 172 Ky. 650, 189 S.W. 721, 724, where the decedent was held to be contributorily negligent in failing to see the train when it was visible for about 250 feet, this statement was made which in every respect fits the facts of this case:

"It has been oftentimes held that to go upon a railroad track just in front of a train which is rapidly approaching, and which is seen and known to be approaching, or which could be known and seen to be approaching, by the ex-

ercise of ordinary care for one's own safety, is such negligence that no recovery can be had of the railroad company for the injury or death of the person who is thus negligent."

Other cases imposing a similar duty on the plaintiff include Southern Ry. Co. v. Feldhaus, Ky., 261 S.W.2d 308; Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705; Louisville & N. R. Co. v. Hyde, Ky., 239 S.W.2d 936; McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933; Illinois Central R. Co. v. Bozarth's Adm'r, 212 Ky. 426, 279 S.W. 636.

Although the above quotation is taken from a case involving an accident which occurred at a private crossing, it is this Court's opinion that the above law is applicable, regardless of the type of crossing involved, where one seeks damages for injuries growing out of a collision between a train and a motor vehicle at such a location.

■■ The obligation imposed upon every person to exercise ordinary care for his own safety requires that, in approaching a railroad track, he must use his senses in the way that an ordinarily prudent person would under similar circumstances, in order to determine whether it is safe to cross the track at that time. Where the facts make it certain that a traveler could have seen or heard an approaching train in time to avert a collision, had he looked and listened properly, he will not be heard to say that he looked for the train but did not see it, or that he listened for it and did not hear it. In Louisville & N. R. Co. v. Hyde, cited above [239 S.W.2d 938], we used this language as to the duty imposed upon a person who is traveling toward a railroad track with the intention of crossing it:

"* * * We have never adopted the widely accepted rule that one must stop, look, and listen before going onto a railroad track, but neither have we held that the railroad company is a guarantor of the safety of those who might come in contact with its facilities. * * * Contrariwise we have held that one must use both his eyes and ears at least to the extent of the ordinarily prudent person in such a situation."

■ As we have shown, the photographic evidence demonstrates that decedent had a clear view across the McElroy lot of the train approaching from the north when he was 225 feet distant from the crossing, and the train was at that time within the range of decedent's vision. To see it, he had only to raise his eyes at any moment after he had passed the barn. The railroad in front of him is straight for several thousand feet, the tracks are laid on a fill, and on the occasion a train 14 feet high was moving on the rails in plain view. He was well acquainted with the crossing, since he had traveled over it practically every day for a considerable period of time. It will also be recalled that appellant's witness, H. E. Pilkenton, testified decedent did not look at any time either to the right or left as he attempted to negotiate the tracks.

We believe it is evident that when we apply the law as stated to the evidence recited herein, we must conclude decedent was guilty of contributory negligence as a matter of law in entering upon the track immediately in front of the rapidly approaching train which he saw or should have seen.

■ Appellant moved for a directed verdict at the close of appellee's evidence and again at the close of all the evidence. Following the rendition of the verdict, appellant moved for judgment notwithstanding the verdict and in the alternative for a new trial. All these motions were overruled. Under these circumstances this Court has authority pursuant to CR 50.02 and CR 50.03 to direct the lower court to enter judgment, notwithstanding the verdict, rather than direct that a new trial be granted. See Coca-Cola Bottling Works

of Lexington v. Bingham, Ky., 277 S.W.2d 468. We see no reason for granting a new trial in this case.

Wherefore, the judgment is reversed with directions that it be set aside and that a judgment be entered for appellant.

HOGG, J., dissents because he believes this is a jury case.

SIMS, J., absent and not sitting.