**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Ruby TROUTMAN, Adm'x. of Estate of Marshall Troutman, Deceased, Appellee.**

Court of Appeals of Kentucky.

Nov. 22, 1961.

Glenn W. Denham, Middlesboro, Henry L. Bryant, Pineville, R. H. Daugherty, James M. Terry, James F. Wheeler, Louisville, for appellant.

Cawood Smith, G. E. Reams, Harlan, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for $10,-000 against the appellant, L. & N. Railroad Company, for the death of Marshall Troutman, who was killed at a grade crossing in a village in Harlan County which the record calls both LeJune and Shields. The appellant contends the trial court should have directed a verdict in its favor because of absence of evidence of negligence or because of conclusive proof of contributory negligence. Alternatively, a reversal is claimed because of error in giving an instruction concerning an extrahazardous or exceptionally dangerous crossing.

The crossing and surroundings are clearly portrayed by plats and photographs, but a clear word picture is difficult to present. The track runs northeast and southwest but in the interest of simplicity we use the cardinal points. It is practically straight for a half mile or so north of this crossing. The train was southbound.

Kentucky Highway No. 38 parallels the railroad 150 feet on the east. A gravel or worn macadam road goes west from the highway for about 100 feet, then makes a jog to the left of forty feet or more and then turns right and crosses the railroad track practically at right angles. A significant fact is that an old vacant storehouse, 75 or 80 feet long, on the north edge of this road between the highway and the track blocks a traveler's view of a train coming from the north. But when a traveler gets beyond that building, he has an open view and can see a train coming down the track for at least 2,000 feet, although an automobile driver has his back to the north for a few feet before entering upon the railroad track. Another structure is an old coal tipple on an abandoned parallel spur track 583 feet from the road crossing. At the time of the accident in January, 1958, there were some weeds and bushes along the edge of the railroad or perhaps some within the right of way, but photographs made when the conditions were the same show that these weeds and bushes formed **no**

substantial obstruction to the view of a man in an automobile of a closely approaching train.

The crossing is what is generally called a "country crossing" of a public road. If it is not to be regarded as an extrahazardous crossing by reason of its location and surroundings, the question of negligence on the part of the railroad company is determinable by proof of its failure to comply with safety requirements of the statute, namely, (1) to maintain a signal crossing board that may be easily seen by travelers, KRS 277.160, and (2) to ring a locomotive bell or sound its whistle "at least fifty rods" from the crossing and continuously or alternatively until the engine reached the crossing. KRS 277.190. If the evidence was sufficient to describe prima facie an extrahazardous crossing, there was the added common law duty of the railroad company to protect the traveling public. That duty is generally defined to be to use such other or additional means to prevent injury to travelers as in the exercise of ordinary prudence or judgment might be considered necessary to afford protection.

It is undisputed that there was a proper crossing sign board at the crossing.

All the evidence was to the effect that the engine whistle or diesel horn had been blown for or about where Highway No. 38 crosses the track 2,000 or 2,100 feet north of the Shields crossing. The plaintiff's evidence that such warning was not given between that point and the crossing (which would be necessary to comply with the statutory requirement of warning within fifty rods or 825 feet of it) was mainly by witnesses who apparently were not listening or were not in a situation to hear the whistle or bell if it had been sounded. On the other side there was very positive evidence by the trainmen and two disinterested witnesses whose attention was directly called to the whistle that it was blown. We do not decide whether or not the evidence as a whole was sufficient in weight to establish a reasonable inference of negligence in this respect, or of proximate cause. Nor need we determine whether the evidence was or was not sufficient to warrant the instruction on additional or greater precautions than the statutory warnings because the crossing could be regarded as extrahazardous in character.

We consider the question of whether the court should have held as a matter of law that the deceased was contributorily negligent.

Two witnesses introduced by the plaintiff testified to the accident. An eleven-year-old boy, who was called principally to testify that the train whistle was not blown, testified on cross-examination that he saw the automobile coming "pretty slow" toward the crossing, and that when the driver got on it "he looked up at the train and then he started to get out" and "he was trying to escape and jump out the door and he didn't hit the ground until the train hit the car and knocked the car into the hill." A fourteen-year-old boy testified that he saw the automobile go on the crossing and that the driver was trying to get out when the train struck the car.

We summarize the evidence for the defendant. Charles Evans, who was on the road nearby, heard the train coming, saw the automobile going toward the crossing at a "very slow speed." He added, "He kept moseying along, barely crawling, and when he got facing the crossing it came into my mind, 'Ain't he going to stop?'" He testified that when the driver "looked around and saw what he had done he opened the door and jumped straight up." Mrs. Florence Hinkle testified that her little boy was out playing, and when she heard the train coming she ran out of her house to see about his safety. She saw the automobile turn off the highway. As it approached the track "it was making a kind of racing noise like it was missing and the man was kind of bent over the steering wheel like this (indicating)." A railroad brakeman riding on the left side of the second engine saw the automobile come out from behind

the old building when it was "ten or twelve car lengths back from the crossing" and make the turns in the road and go in front of the train. The fireman, who was sitting on the left side of the first engine, saw the automobile at about the same time and place and called to the engineer, "Hold it," or "That'll do" (which are trainmen's calls "to go into emergency"). The engineer testified the fireman called to him when his engine was about 100 feet from the crossing. He applied the emergency brakes, and the automobile "appeared from the other side to my side, and I struck him about middleways of the car."

Reverting to the description of the crossing. It is plain that when a motorist passed the old building on his right he could see up the railroad for at least 600 or 700 feet as far as the old tipple. When he turned left, his back was to the north and for a moment or so he could not, of course, see a train, but when he turned to the right, he still had 25 or 30 feet to travel before getting upon the crossing. At that time his view was clear and unobstructed. The train was going about 25 mph and the automobile at 5 mph or less. So, the decedent was bound to have seen the approaching train in time to have stopped or turned away. Instead, he kept right on until he got upon the crossing. No one knows whether he stalled his motor. When he realized his imminent peril, he tried to escape by getting out of his automobile.

■■ It is unquestioned that a railroad crossing is in itself a warning of danger and that a traveler having knowledge of its existence must exercise care for his own safety in such a degree as is proportionate to the danger then present or apparent of being struck by a train. Nashville, C. & St. L. Railway Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; L. & N. R. Co. v. Hyde,

Ky., 239 S.W.2d 936. If he knows, or in the exercise of reasonable care and prudence must have known, of a train approaching by using his senses of sight and hearing in a way that an ordinarily prudent person would do under similar circumstances, and drives his automobile in front of the train, he assumes the risk of crossing in safety. If he miscalculates and is injured, he is guilty of contributory negligence. Hunt's Adm'r v. Chesapeake & O. Railway Co., Ky., 254 S.W.2d 705; Louisville & N. Railroad Co. v. Hines, Ky., 302 S.W.2d 553; Chesapeake & O. Railway Co. v. Trimble, Ky., 306 S.W.2d 310.

■■ Where there is reasonable room for a difference of judgment upon positive or inferential facts, the question of contributory negligence is for the jury. But when evidence in a given case is susceptible of only one reasonable inference with respect to a controlling issue, the question becomes a matter of law for decision of the court. In the present case the conditions surrounding the crossing and the facts of the accident are without contradiction. We conclude that the trial court should have directed a verdict for the defendant on the ground of contributory negligence of the plaintiff's decedent. Nashville, C. & St. L. Railway Co. v. Stagner, supra, 305 Ky. 717, 205 S.W.2d 493; McCarter v. L. & N. R. Co., 314 Ky. 697, 236 S.W.2d 933; Hunt's Adm'r v. Chesapeake & O. Railway Co., supra, Ky., 254 S.W.2d 705; Louisville & N. R. Co. v. Hines, supra, Ky., 302 S.W.2d 553; Chesapeake & O. Railway Co. v. Trimble, supra, Ky., 306 S.W.2d 310.

As the defendant made a motion for a judgment notwithstanding the verdict, CR 50.02, 50.03, upon return of the case the court will enter a judgment in accordance with this opinion.

Judgment reversed.